[Civ. No. 15556. Second Dist., Div. Three. Aug. 14, 1947.]

SOUTHERN CALIFORNIA TELEPHONE COMPANY (a Corporation), Respondent, v. HAROLD F. DAMENSTEIN et al., Defendants; ESTATE OF HAROLD F. DAMENSTEIN, Appellant.

Gilford, Morris & Bragin and Max M. Gilford for Appellant.

Lawler, Felix & Hall and Brinton N. Bowles for Respondent.

WOOD, J.—The plaintiff obtained judgment in Los Angeles County against Harris Damenstein, also known as H. F. Damenstein, also known as Harold Franks, for $2,584.05 on March 23, 1933. The defendant died September 19, 1945. Ceale Damenstein, his widow, was appointed special administratrix of his estate, and later was appointed executrix of the will of said deceased. On April 9, 1946, upon motion of plaintiff, the superior court made an order substituting the "Estate of H. F. Damenstein," and Ceale Damenstein, administratrix of the estate of H. F. Damenstein, as "defendant" in said action in place of H. F. Damenstein. Also on said day, upon motion of plaintiff under section 685 of the Code of Civil Procedure, the court made an order granting plaintiff leave to enforce the said judgment against the "Estate of H. F. Damenstein" by presentation of a claim against the estate and by bringing an action thereon if it should be rejected. Also on said day the court overruled a "general demurrer of defendant" to the affidavit in support of plaintiff's motion for leave to enforce the judgment. The defendant "Estate of Harold F. Damenstein" appeals from those orders. It will be assumed that the appeal is on behalf of Ceale Damenstein as executrix of the will of Harold F. Damenstein, deceased.

An order overruling a demurrer is not appealable. (*Hanke* v. *McLaughlin*, 20 Cal.App. 204, 205 [128 P. 772]; *Pulvermacher* v. *L. A. Co-ordinating Com.*, 61 Cal.App.2d 704, 711 [143 P.2d 974].)

The judgment debtor (appellant) contends that the affidavit of the judgment creditor (respondent) was not sufficient to support its motion for leave to enforce the judgment, in that it did not set forth sufficient reasons for its failure to proceed, within five years after the entry of the judgment, under the provisions of section 681 of the Code of Civil Procedure. Said section provides: "The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement. . . ." Section 685 of the Code of Civil Procedure provides: "In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion." The affidavit should show that the judgment creditor "during the five years following entry of judgment," exercised "due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time." (*Butcher* v. *Brouwer,* 21 Cal.2d 354, 358 [132 P.2d 205].) "Whether he has exercised such diligence is, by the express provisions of the statute, for the trial court to determine in its discretion," and "an order made under such authority will not be disturbed upon appeal unless it clearly appears that the determination constitutes an abuse of discretion." (*Beccuti* v. *Colombo Baking Co.,* 21 Cal.2d 360, 363 [132 P.2d 207].) The matter was submitted upon the affidavit in behalf of plaintiff, and the affidavit of Ceale Damenstein.

The affidavit in support of plaintiff's motion for leave to enforce the judgment was made by Mr. Brinton N. Bowles, attorney for plaintiff, and it stated: That the said above described judgment was entered on March 27, 1933; that on May 11, 1933, the plaintiff caused an execution to be issued and, on May 23, 1933, the execution was returned wholly unsatisfied; that on June 1, 1933, an order was issued that defendant appear on supplementary proceedings on June 28, 1933; that said order was served on defendant on June 2, 1933; that on the date set for the appearance of defendant he failed to ap-

pear and a citation *in re* contempt on the part of the defendant was issued; that the citation was served on defendant thereafter, and on August 10, 1933, the defendant was examined and discharged on the supplementary proceedings; that as a result of said examination it was determined that the defendant did not own property out of which the judgment could be satisfied; that an agent of plaintiff made a search of the records of the county recorder's office for the period from the entry of the judgment to the end of 1944, and said search failed to disclose the ownership of any property by defendant; that according to said records there was no property standing in the name of defendant; that there appeared on said records an abstract of said judgment under the date of May 22, 1934; that other records of Los Angeles County had been searched by the agent of plaintiff, and on information and belief the affiant alleged that eight judgments in the municipal court of the City of Los Angeles, which various plaintiffs had obtained against defendant in the years 1931, 1932, 1933 and 1935, for various sums of money, were wholly unsatisfied; that in four of those municipal court cases the defendant was examined and discharged on supplementary proceedings during the period from 1931 to 1935; that the records of the Los Angeles County Assessor's office had been searched and that in the name indexes the name of defendant does not appear at any time from March 27, 1933, to the end of 1944, except that in 1939, certain furniture of the assessed value of $150 was assessed to one Harold Damenstein, and in 1940, certain furniture and equipment of the value of $285 was assessed to Harold Damenstein; that in the assessment rolls there was no record of property upon which execution could be levied; that the records of the Los Angeles County Clerk's office had been searched to determine the ownership of the Royal Chemical and Disinfectant Company; that said records disclosed that one Raymond Pozen on July 15, 1935, filed a certificate of doing business under said fictitious firm name; that on January 6, 1944, an amended certificate of doing business under said name was filed with the county clerk which discloses that said business was vested in Ray C. Posner and Harold F. Damenstein, as partners; that on March 6, 1944, another amended certificate of doing business under said name was filed which discloses that Harold F. Damenstein was the sole owner; that the first time there has appeared, since the entry of the judgment, any property upon which execution could

have been levied was January 6, 1944; that the defendant died September 19, 1945; that Ceale Damenstein, the widow of defendant, filed a petition for the probate of defendant's will, stating that the value of decedent's estate was $30,000, that it consisted of the business known as the Royal Chemical and Disinfectant Company, that she had been the business manager of said company since it was created about July 15, 1935; that she was appointed special administratrix of the estate; that she had withheld filing an inventory in the estate for more than six months, and no inheritance tax appraiser had been appointed, and in her report as special administratrix she had not stated the extent and value of decedent's property; that the widow petitioned the court for the allowance of $600 each month for living expenses and the petition was granted; that there is sufficient property in the estate to satisfy the judgment; that Raymond Pozen is also known as Ray C. Posner, and that said person is either the same person as the defendant or was "an apparent fraud and dummy for" the defendant; that not until 1944 did the defendant appear openly and notoriously as possessing any property out of which the judgment could be satisfied; that defendant had concealed himself under other names for the purpose of defrauding the plaintiff and defeating the payment of the judgment.

The affidavit of Ceale Damenstein stated: that she and Harold F. Damenstein were married in 1932, and lived together in Los Angeles County until his death; that since 1938, he had been licensed by the state as a member of the pest control board; that he was a member of the Elks Lodge of Burbank (date not stated); that he had been a member of a Masonic lodge since 1929; that he had been a member of the Scottish Rite and Shrine lodges since 1942; that their home in Los Angeles was acquired in her name in 1941, and that a statement of identity was filed in the escrow showing that Harold F. Damenstein was her husband; that they had been listed in the city directory since 1933, except 1935 and 1940, and except during the war period, after 1942, when the directory was not issued; that defendant was listed therein in 1936, 1937, 1938, 1939, 1941, 1942, as manager of the Royal Chemical and Disinfectant Company, and under the listing of that company for those years he was listed as its manager; that since July, 1938, he had been a registered voter in Los Angeles County; that since 1941 he had been a customer of the Water and Power Department and the Southern California Gas Company; that

he had been a member of the Southern California Automobile Club for five and a half years (dates not stated); that he has had an automobile operator's license since 1929; that he had a war ration book; that in 1944, a dog license was issued to him; that from 1935 to 1944, he was employed as sales manager of the Royal Chemical and Disinfectant Company, and a social security number was issued to him; that on January 1, 1944, he bought a half-interest in said company from his wife's brother, Ray L. Posner, and a certificate showing the purchase was filed in the county clerk's office on January 6, 1944, and in the recorder's office on February 26, 1944; that when defendant bought the house in 1941, it was worth $7,500 subject to a $4,000 mortgage, but since 1943, it has been worth $15,000 and is clear of encumbrance; that in the last five years defendant sold supplies to the plaintiff; that affiant worked at said company from its beginning; that her brother Ray C. Posner, who was known as Ray Pozen, gave her and defendant an opportunity to work up in the business and they eventually took it over; that she is the sole beneficiary of defendant's estate; that the delay in filing the inventory is that the appraiser has not determined the value of the good will of the business; that affiant's name has been in the telephone book for 10 years; that for over 10 years plaintiff has made no effort to obtain an execution; that during their marriage she never knew defendant "to use any other name but his own"; that she had heard him say he had been "left holding the sack" by his partners; that plaintiff had not used any diligence to levy execution; that since 1935 defendant "was on a large salary and received ten to twenty-five per cent commissions" (the amounts were not stated); that during the last 10 years affiant had an automobile in her name of a value in excess of $1,000, and the last car registered in her name was a 1941 Cadillac.

Appellant argues, in support of his contention that the affidavit in behalf of plaintiff was insufficient, that all of the statements in it which were made upon information and belief, that is, those relating to an agent's search of the records of the county recorder, assessor, clerk and the municipal court, are hearsay in that the attorney who made the affidavit had not searched the records. Such statements were hearsay and should not be given consideration. The affidavit of plaintiff, after omitting the hearsay, shows that plaintiff, during the five years following the entry of the judgment, obtained an

execution; that it was returned wholly unsatisfied; that the plaintiff obtained, and served on defendant, an order for him to appear on supplementary proceedings; that he failed to appear at the time stated, and plaintiff obtained, and served on him, a citation *in re* contempt; that thereafter defendant appeared and was examined on supplementary proceedings and discharged; and that as a result of such examination no property was located which could be applied in satisfaction of the judgment.

The affidavit of Ceale Damenstein shows that, during the five years following the entry of the judgment (that is from March, 1933, to March, 1938) defendant lived in Los Angeles County and was listed in the Los Angeles city directory except for the year 1935; that under the city directory listing of the Royal Chemical and Disinfectant Company for 1936, 1937, and 1938, he was listed as its manager; that he was sales manager of that company after 1935, and "was on a large salary," and received commissions on sales; that an automobile of a value in excess of $1,000 was registered in the name of the wife of defendant in the years 1936, 1937, and 1938; that defendant was a member of the Masonic Lodge; and that he had an automobile operator's license. It is to be noted that her affidavit, as to that period of five years, does not state the amount of his salary, nor the amount of his commissions, nor whether the automobile which was registered in her name was free of encumbrance or whether he had any interest in it. Other than the indefinite reference to his salary and his commissions, and the reference to an automobile being in the name of the wife, the affidavit, as to the five years following the judgment, merely recites matters from which it might be ascertained where the defendant resided during those five years. It did not state that any public record during that period showed that any property stood of record in the name of defendant, and it did not state that he owned any property.

It is also to be noted that her affidavit, as to the time after the first five years, that is after 1938, does not state the amount of salary, nor the amount of commissions, nor whether the automobile which was acquired in her name was free of encumbrance or whether he had an interest in it, nor whether the house which was acquired in her name in 1941 was subject to a homestead. Her affidavit as to the period after 1938, in addition to reciting matters from which it might be ascer-

tained where defendant was residing, shows that in 1941, a house was acquired in the name of the wife, and that in 1944, about 20 months before defendant's death, he acquired a half-interest in the Royal Chemical and Disinfectant Company.

The record in the present proceeding does not show that a search of the public records during the five years following the entry of the judgment would have disclosed that defendant owned any property, and the record does not show that defendant owned any property during that time which was not exempt from execution. The plaintiff was diligent in obtaining an execution within a few months after the entry of the judgment, and in obtaining an order for defendant's examination on supplementary proceedings, and was persistent in trying to secure his appearance for said examination after he failed to appear on the date set for the examination. After some inconvenience resulting from defendant's failure to appear, an examination on supplementary proceedings was had and defendant was discharged, it having been determined that he had no property subject to execution. Plaintiff could not have obtained an order for another examination on supplementary proceedings without complying with a rule of the superior court of Los Angeles County (Rule 24, § 2) which provides: "Whenever a judgment creditor has examined a judgment debtor pursuant to . . . section 714 . . . of the Code of Civil Procedure . . . no order for a further examination of the same person shall be made except it appear by affidavit that the judgment debtor has property not exempt from execution . . .. Such affidavit shall set forth the dates of every previous examination . . . and shall state fully what new facts have been discovered." In *Corcoran* v. *Harris*, 94 Cal.App. 19 [270 P. 391], it is said at page 20: "Though the section [Code Civ. Proc., § 714] provides that the judgment creditor 'is entitled to' such an order [for supplementary proceedings], it is not designed to permit him to harass the judgment debtor to no purpose. This would seem to follow from the well-settled rule that a second order of examination . . . should not be made unless new facts are disclosed to the court which were not known to the judgment creditor at the time of the former hearing." It does not appear from the record here that plaintiff could have made such an affidavit, within the five-year period, as that required as a basis for obtaining a further examination of defendant on sup-

plementary proceedings, namely that defendant had acquired property which was not exempt from execution.

Although plaintiff did not search the public records to ascertain whether any property stood in the name of defendant, it appears from the record here, that it would have been futile to do so. Appellant argues that plaintiff's affidavit should have shown that the public records were searched, and that Ceale Damenstein's affidavit cannot be relied upon to cure that defect. Irrespective of whether her affidavit can be so relied upon, plaintiff's affidavit shows that plaintiff exercised due diligence in a most important and effective respect in trying to satisfy the judgment during the five years following the entry of the judgment, namely that of obtaining an execution and examining defendant on supplementary proceedings, and Ceale Damenstein, in her affidavit in opposition to plaintiff's showing of such diligence, had the opportunity of showing, if it be a fact, that defendant held title to property, which was not exempt from execution, during those five years, in such a manner that plaintiff in the exercise of diligence could have subjected it to execution. The mere failure of plaintiff to search the public records to ascertain whether title to property stood of record in the name of defendant would not necessarily indicate a lack of diligence. If in fact public records disclose that a judgment debtor has property subject to execution, a failure to search such records would indicate a lack of diligence and an intention not to pursue the collection of the judgment. By such failure under such circumstances a judgment debtor, who would have recourse against other persons if he should be required to pay the judgment, might be prejudiced by such failure to examine the records and levy upon the property, in that, he might be led to believe that the creditor did not intend to collect the judgment and as a result of such belief the debtor might not proceed against the other persons against whom he had recourse. In the recent case of *John P. Mills Org.* v. *Shawmut Corp.*, 29 Cal.2d 863 [179 P.2d 570], wherein the debtor, a stockholder, would have had recourse against others, and wherein an execution after five years was refused, it was indicated that the failure for many years to proceed to collect the judgment, when the debtor had kept a bank account, cash and bonds in a safe deposit box, for many years sufficient in amount to substantially reduce the judgment, prejudiced him in pursuing his remedy against others and that such prejudice was

a factor in arriving at the conclusion not to allow the execution. A judgment debtor should not gain an advantage because a judgment creditor was not active in searching for something which did not in fact exist. In *Helvey* v. *Castles*, 73 Cal.App.2d 667, it was said at page 674 [167 P.2d 492] : "The law does not require idle acts and the statute under consideration [Code Civ. Proc., § 685] should not be given a construction which would penalize a creditor for inactivity when he in good faith explores the available sources of information. There is no rule of law which requires a creditor to continue a vigorous search for something he believes does not exist and which does not in fact exist. Each case must be judged upon its own facts; the discretion in such matters is with the trial court, not the reviewing court."

In the case of *Beccuti* v. *Colombo Baking Co.*, 21 Cal.2d 360 [132 P.2d 207], cited by defendant, wherein an execution after five years was refused, no execution had been issued during the five years, and the affidavit in behalf of the creditor stated that a full investigation had been made concerning the collectibility of the judgment, and the affidavit on behalf of the debtor in opposition to the motion showed that the debtor did own of record unencumbered real property for many years following the entry of the judgment sufficient in value to satisfy the judgment. In the case of *Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210], cited by defendant, wherein an execution after five years was refused, no execution had been issued during the five years, and the affidavit in behalf of the creditor stated that neither the debtors nor any property belonging to them could be located until just before making the affidavit. The opposing affidavits therein showed that the debtors owned a lot, and a grocery and mercantile business, for many years following the entry of the judgment. In the case of *John P. Mills Org.* v. *Shawmut Corp., supra,* wherein an execution after five years was refused, proceedings in aid of execution had not been had during the five years, and it was shown by the debtor that he had property sufficient in amount to substantially reduce the judgment. A distinguishing point between those cases and the present one is that in those cases no execution was issued or supplementary examinations had, whereas in the present case, as above stated, an execution had been issued and a supplementary examination had; and further, in those cases the debtors showed that

assets were available during the five-year period, whereas in the present case such showing was not made. ▮ When a judgment creditor has made a prima facie showing of due diligence it is incumbent on the debtor to show, if he can do so, that the creditor's alleged due diligence was not due diligence because the debtor did in fact hold title to property, which was not exempt from execution, during the five years following the entry of judgment, in such a manner that the creditor in the exercise of due diligence could have subjected it to execution. Each case is to be determined upon its particular circumstances.

▮ In the present case there was no showing that defendant held any property during the five years following the entry of the judgment upon which an execution could have been levied, or that he held such property at any time until January, 1944, when he acquired a half-interest in the chemical business. As to that interest of defendant, he had acquired it about 20 months before his death, and when plaintiff learned of such interest through the probate proceedings it promptly made the motion herein for leave to enforce the judgment. As to the automobile which was registered in the name of the wife, there was no showing, as above stated, that it was free of encumbrance or that defendant had any interest in it. As to the house which was purchased in 1941, in the name of the wife, there was no showing that there was no homestead on it, and no showing that defendant had any interest in it. As to his salary and commissions, there was no showing as to their amounts or whether they were exempt from execution. As to the use of aliases by defendant, the affidavit of Ceale Damenstein did not say he did not use different names, but asserted equivocally that she never knew him "to use any other name but his own," and she did not state what name he did use. The trial court could have inferred in view of the close business relationship of Posner, the alleged owner of the chemical business, and the defendant and Ceale Damenstein in the operation of that business, and in view of the aliases of Posner and Damenstein, and in view of the fact that the automobile, the house, and the telephone were in the name of the wife, that defendant was trying to make it difficult for plaintiff to satisfy its judgment.

"[E]ven though the creditor may have satisfied the court that he has proceeded with due diligence to enforce his judgment under section 681, the court may still deny him its

process if the debtor shows circumstances occurring subsequent to the five-year period upon which, in the exercise of a sound discretion, it should conclude that he is not now entitled to collect his judgment.'' (*John P. Mills Org.* v. *Shawmut Corp.*, *supra*, p. 865.) The wife is the sole beneficiary of the $30,000 estate of defendant. The Cadillac automobile and the house are in her name, and she is taking $600 a month from the estate as a family allowance. Comparatively, the amount of the judgment is small. It does not appear that circumstances have arisen since the five-year period which would make it a hardship on her or inequitable to enforce the judgment.

The trial court did not abuse its discretion in granting the motion to enforce the judgment.

The appeal from the order substituting the ''Estate of H. F. Damenstein'' and Ceale Damenstein, administratrix, as ''defendant'' is not argued specially on appeal. It is mentioned at the beginning of the argument concerning the motion to enforce the judgment. The appeal from that order is without merit.

A matter incidental to this appeal will now be considered. Prior to the time of oral argument on this appeal, appellant filed a document herein entitled, ''Notice of Motion for Costs for Appellant's Reply Brief.'' The notice stated that appellant would make a motion on June 18, 1947, (which was the date of oral argument herein) ''for costs to be awarded Appellant for the reasonable legal fee incurred by Appellant for the preparation of said Appellant's Reply Brief.'' The asserted basis for the motion, as shown by the affidavit of Mr. Gilford, one of the attorneys for appellant, is as follows: That after Mr. Bowles, who originally was the only attorney herein for respondent, had filed a reply brief for respondent, he requested Mr. Gilford to stipulate that he might file a new reply brief for respondent in order to make several references therein to the clerk's transcript, which references had been omitted in the reply brief on file; that Mr. Gilford replied that he would so stipulate, but he did not want any new points and authorities cited in the new brief because he had practically completed a rough draft of appellant's reply brief; that Mr. Bowles said that was satisfactory; that a new reply brief was filed which, according to appellant, violated the stipulation in that it contained new points and authorities; that counsel for appellant had to write a new reply brief for

appellant; that the reasonable value of his legal services in preparing appellant's reply to respondent's original reply brief was $500.

Based upon a written stipulation filed herein, which provided that a new reply brief might be filed "without inserting additional authorities other than" cited in respondent's brief then on file, this court granted respondent permission to withdraw its original reply brief and to file a new one.

The attorneys for respondent state that they understood that the only restriction which was imposed in regard to filing the new brief was that cases decided since respondent's original reply brief was filed should not be cited; that such understanding seems reasonable in view of Mr. Gilford's letter, which was written at the time the stipulation was made and was quoted in his affidavit in support of his motion. The letter stated: "I have redrawn your stipulation in order to set forth more definitely our understanding. In view of the fact that my rough draft is completed and I do not wish to impose any additional work on my office, nor do I wish to take advantage of any law of such recent vintage that might be to your advantage. I think such law, if you have any to cite, can be presented on the oral argument." Mr. Bowles stated in his affidavit that Mr. Gilford said he did not want respondent to cite cases in the revised brief which were decided subsequent to the filing of respondent's original brief. Respondent also asserts that such later cases were not cited; that there was no restriction against making new points; and that there was no violation of the order of court permitting the filing of the brief.

It appears that the new brief was in accordance with the stipulation as the attorneys for respondent understood it. Cases decided after the original brief was filed were not cited. Three new points were stated—one relating to reexamination of debtor, another relating to curing defects in an affidavit by another affidavit, and another relating to waiving alleged errors which are not pointed out in the briefs. Citations in support of those points were given. The draft of appellant's proposed original reply brief is not before the court for comparison with her reply brief which was filed. There is no showing as to how much additional time was required to answer respondent's new reply brief.

Appellant cites, in support of her motion, rule 26 of the New Rules on Appeal to the effect that the reviewing

court may award or apportion costs, and where any party has been guilty of any unreasonable infraction of the rules governing appeals the court may impose upon the offending attorneys such penalties, including the withholding or imposing of costs, as the circumstances may require. Appellant also cites cases to the effect that the matter of determining what costs shall be allowed is largely one regulated by the appellate court in the absence of statute; and that the court has wide discretionary powers as to the division of costs on appeal.

The motion here is, in effect, to award attorneys' fees as costs. Attorneys' fees for services of the nature here involved are not to be regarded as costs. If this court had power to make such an award, the circumstances here are not such that the award should be made.

The order granting leave to enforce the judgment, and the order substituting parties defendant, are affirmed. The appeal from the order overruling the demurrer is dismissed. The motion to award attorneys' fees is denied.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 2, 1947.