[S. F. No. 16742. In Bank. Dec. 10, 1942.]

FRANK O. HATCH, as Administrator, etc., Respondent, v. WILLARD P. CALKINS et al., Defendants; W. F. WILKIE, Appellant.

Cushing & Cushing and Everett S. Layman for Appellant.

Robert E. Hatch, Lercara & Nelle, Carl Conradi, Jr., and Charles H. McDonald for Respondent.

EDMONDS, J.—An order directing the issuance of an execution upon a judgment rendered more than 29 years after it was entered is attacked by the debtor upon the principal ground that it constitutes an abuse of discretion. Although section 685 of the Code of Civil Procedure, the statute construed in *Butcher* v. *Brouwer, ante,* p. 354 [132 P.2d 205], and *Beccuti* v. *Colombo Baking Co., ante,* p. 360 [132 P.2d 207], governs the rights of the parties to the present case, the factual premise is somewhat different from that shown in either of them.

N. E. Scofield sued the appellant and W. P. Calkins on an agreement to redeem certain stock of Calkins Newspaper Syndicate, a corporation. In May, 1911, a joint and several judgment was entered against them. The decree provided, however, that the plaintiff redeliver to the defendants the certificate for the shares of stock. Scofield died in 1912; his wife and the defendant Calkins died in 1929. No administration of the estate of Scofield or that of his wife was had until 1940, when Frank O. Hatch was appointed administrator of the estate of Mr. Scofield.

Hatch, in his representative capacity, was then substituted as the plaintiff in the Scofield action and secured an order to show cause why the judgment should not be enforced against the defendants under the provisions of section 685 of the Code of Civil Procedure. The order to show cause was based upon his affidavit, which set forth that the judgment was unpaid, and that frequent efforts by the plaintiff to collect it had been unsuccessful. At the time of the filing of the complaint, the affiant continued, a writ of attachment was issued and levied upon Calkins Newspaper Syndicate, but the corporation reported that it held no assets belonging to either or both of the defendants. And to have had any other writ of attach-

ment or of execution issued, averred the affiant upon information and belief, would have been futile since the "affiant is informed and believes and thereupon alleges that during the five years immediately next succeeding the entry of judgment, the defendants had no assets which could have been subjected to the process of this court." According to the affidavit, just before the judgment was entered, the corporation went out of business and the defendants disappeared from San Francisco where they had been living and maintaining their offices. The plaintiff had no means of ascertaining where the defendants had gone and the affiant did not discover that the appellant is living in Truckee, a town about 175 miles from San Francisco, until just prior to the making of his affidavit. And, said the affiant, the plaintiff has never been able to discover the whereabouts of the defendant Calkins since he left San Francisco.

In addition to these facts, Hatch asserted that he had been informed and believed that the defendants concealed their assets in order to prevent the enforcement of the judgment. Furthermore, he said, no property had been discovered until immediately prior to the making of his affidavit, when he located property of the appellant, standing in the name of others, which may be subjected to the payment of the judgment.

In a counteraffidavit, the appellant stated that he has lived in Truckee since the year 1885, with the exception of the three years from 1906 to 1909 when he lived in San Francisco in connection with the business of the Calkins Newspaper Syndicate. The population of Truckee prior to 1930 was never greater than 1,200. Since 1893, he averred, he has owned and operated at least one grocery and mercantile store in Truckee, either by himself or in conjunction with others, and at all times since 1912, this business has been owned and operated solely by him.

Wilkie's affidavit also showed that he was acquainted with Scofield, who had lived in Truckee for many years prior to his death in 1912. Scofield traded in Wilkie's stores. Although Scofield went to the coast for his health, he intended to return to Truckee, and after his death his wife continued to live in Truckee for approximately 10 years. She also knew the affiant and that he was conducting a grocery and mercan-

tile business in Truckee, but she never mentioned the judgment to him.

In his affidavit, Wilkie also stated facts concerning the judgment. He asserted that he was never informed of the date of trial, nor did he receive any notice of the entry of judgment. His first knowledge of it was obtained when the order to show cause in the present proceeding was served upon him. And between 1927 and 1939, he and his wife were the record owners of valuable real property in San Francisco. In stating facts concerning his whereabouts since the judgment was entered, the affiant said that although he left San Francisco in 1909, his wife and children remained there until 1915 and were listed in the San Francisco directory. Any one who had inquired of them would have been told that he was then living in Truckee. Moreover, both Mr. and Mrs. Scofield, at the time of the entry of the judgment, knew that he was living in Truckee and engaged in the grocery and mercantile business there.

At the hearing on the order to show cause, counsel for the substituted plaintiff and the appellant stipulated that Wilkie had not paid the judgment, and also that Frank O. Hatch had no personal knowledge of the facts set forth in his affidavit ''except such knowledge as was obtained from the judgment roll and the documents, records, and papers filed in the action.'' Counsel further stipulated that Calkins Newspaper Syndicate was adjudicated bankrupt in 1909.

In response to questions by the court, Wilkie testified that beginning about 1908, and continuing for approximately three years, he and his brother jointly owned the grocery business in Truckee. He then purchased his brother's interest and thereafter was its sole proprietor. His brother left Truckee and went to Alameda county where he still lives. Upon cross-examination, Wilkie testified that when he returned to Truckee from San Francisco in 1909, it was generally known that he and his brother owned the store and that he was not working for his brother. Although he could not remember whether any formal announcement was made in regard to his brother's withdrawal from the business, Wilkie stated that the residents of Truckee had knowledge of the change of ownership when his brother left Truckee. Also, the appellant owned a corner lot in Truckee between 1911 and 1916,

which, so far as he knew, was the only real property standing in his name during those years. His store was maintained on leased premises.

By an answer made in 1909 to a complaint to establish title to a large number of lots, Wilkie acknowledged that he claimed ownership of certain land in San Francisco. The judgment in that action entered in September, 1909, quieted title to the property in the name of Laura E. Buckman, as the assignee of Wilkie. Mrs. Buckman was the appellant's mother-in-law. A deed to this property from Mrs. Buckman to Mrs. Wilkie, dated July 7, 1911, was recorded in 1918.

Wilkie testified that he could not remember why he made the assignment but said that he might have owed her husband some money and transferred the property as security for the loan. He did not himself repay the loan and did not know whether his wife paid any consideration for the subsequent transfer of the property to her. Neither did he know why the deed was not recorded for seven years after its execution.

In a counteraffidavit, a grandson of Mr. and Mrs. Scofield stated that his grandfather died in Oakland within one year after the judgment was entered, during a large part, if not all, of which time he was away from Truckee. Mrs. Scofield remained in Oakland for some time. With the exception of six months prior to 1913, which she spent in a logging community about 15 miles from Truckee, the affiant asserted that she did not again live in Truckee. The grandson also stated that about the time Wilkie was in San Francisco, he transferred all of his business in Truckee to his brother. And according to the affidavit, at the time Mrs. Scofield moved to the San Francisco bay district in 1913, from outward appearances and the "common knowledge in the community," the appellant was working for his brother in the Wilkie Mercantile Company. If Mrs. Scofield, or her family, had known of Wilkie's ownership of the business, the affiant said, "we would have started something before this, but we never did have any information that the money could be collected from Wilkie; in fact, every indication was to the contrary."

Another grandson of the Scofields, by affidavit, stated that it was his understanding, and the general understanding in the community, that when Wilkie left Truckee in 1906, his interests were all acquired by his brother, Herman Wilkie, and that when the appellant returned some

few years later, he was only working for his brother and that he himself was "judgment proof." Continuing, he said, "I had always heard that Wilkie had his assets covered up so the Scofield family could not get at them. This has been a matter of family discussion and of general discussion amongst people in or interested in Truckee for many years."

Without waiving any objection to the incompetency of evidence dealing with common knowledge, understanding or reputation, the appellant introduced the affidavits of two townspeople who had lived in Truckee prior to the time that the appellant originally moved there. The first affiant is the present justice of the peace in the township. He had owned and operated a grocery store in Truckee from 1903 to 1919. His statements are directly contrary to those of the grandsons of the judgment creditor. It was not common knowledge or general understanding of the people in Truckee after 1906, he said, that the appellant had no interest in the grocery and mercantile business. Nor was it common knowledge in 1913 or at any other time since the appellant has lived in Truckee that he was only working for his brother Herman. Furthermore, it was never, at any time, the general understanding in Truckee that Wilkie was judgment proof or that no one could collect anything from him.

The other affidavit was by one who had served as secretary, and later as president, of the Truckee Chamber of Commerce from 1912 to the present. From 1923 to 1939 he was the manager of a branch of a national banking corporation in Truckee. His affidavit included substantially the same facts as those presented in the affidavit of the justice of the peace.

The appellant contends, first, that after a lapse of 20 years from the entry of judgment, a presumption arises that the judgment has been paid. And while it is true that he did not pay the judgment, still the presumption exists that the judgment was paid by Calkins. Secondly, he claims that the plaintiff is barred by laches from enforcing the judgment. In support of this assertion, he urges that the lapse of 29 years in conjunction with the death of the original plaintiff about 28 years ago, that of his widow about 10 years ago and of the other joint debtor about 11 years ago, with the ensuing loss of evidence, the effect of the pas-

sage of years upon any other witnesses, and the loss of Wilkie's right of contribution by the death of Calkins, constitute such serious prejudice to the appellant as to amount to laches. Furthermore, the appellant charges that the substituted plaintiff failed to show the performance of the condition of the judgment requiring the plaintiff to redeliver the shares of stock to the defendants and therefore is not in a position to seek enforcement of the judgment in his favor. In addition, he claims that the plaintiff failed to make a prima facie showing that he was entitled to have the judgment enforced and there was no evidence subsequently introduced to supply the deficiency or excusing the delay in seeking to enforce the judgment. The remaining' objections of the appellant are addressed to alleged errors in the admission of evidence. Most of such complaint relates to the admission of statements of common knowledge or general discussion in Truckee as to the appellant's solvency.

In answer, the respondent, as the representative of the judgment creditor's estate, claims that the appellant may not object to the enforcement of the judgment because of his alleged concealment of his assets. He further contends that, in exercising its discretion in directing the issuance of writs of execution, the court properly might consider the alleged fraud of the appellant at the hearing on the order to show cause in the latter's misrepresentation to the court that he had been prejudiced by the nonreturn of the stock of the Calkins Newspaper Syndicate as provided in the decree upon which execution is sought, by concealing from the court the fact that the corporation was bankrupt and the shares valueless. The respondent also accuses the appellant of deliberately suppressing evidence unfavorable to his defense of prejudice by the loss of his right to contribution from Calkins. And additional evidence of fraud appears in the alleged impeachment of the appellant's credibility in certain instances.

Under the decisions of this court in *Butcher* v. *Brouwer, ante,* p. 354 [132 P.2d 205] and *Beccuti* v. *Colombo Baking Co., ante,* p. 360 [132 P.2d 207], it is unnecessary to discuss the majority of these contentions. The appellant's testimony that he owned a corner lot in Truckee in his own name from 1911 to 1916 is not controverted. The statements of the general reputation and com-

mon knowledge of the community regarding the solvency of the appellant, are of course hearsay insofar as they may have been offered to prove that he had no assets subject to execution during this period. Since then the judgment debtor owned property throughout the five years following the entry of judgment, the present proceeding is governed by the rules stated in *Beccuti* v. *Colombo Baking Co., supra,* and if the exercise of reasonable diligence by the judgment creditor during this period would have disclosed property subject to execution, the motion should be denied. The precise question for determination, therefore, is whether the record shows that, had the judgment creditor exercised reasonable diligence in the investigation of the appellant's assets, he would have discovered property subject to execution.

Unquestionably, under the rule of *Beccuti* v. *Colombo Baking Co., supra,* a judgment creditor is not required to look for property of the judgment debtor in every county in the state. That Mr. and Mrs. Scofield knew the appellant lived in Truckee, however, may not be disputed. Furthermore, the instrument upon which the judgment was based was dated, "Truckee Nov. 14th 1906." If the debtor's testimony concerning his ownership of real property is true, a check of the assessor's index should have revealed the existence of the lot to which title stood in his name from 1911 to 1916. Such an investigation is usually a preliminary step in ascertaining a debtor's assets. And although the inference could properly be reached, from the evidence before the superior court, that the appellant may have owned another parcel of real property in another county which he concealed from creditors by a transfer to his mother-in-law and a subsequent retransfer to his wife, this does not alter the fact that other property readily ascertainable by ordinary investigation stood in the appellant's name during the five years following the entry of judgment.

This evidence clearly shows that the creditor did not exercise even slight diligence in endeavoring to collect his judgment. But was he excused from making an investigation when there was town gossip in the community where the debtor resided that he had no assets? In other words, does the amendment to section 685 contemplate that a judgment creditor may rely upon the hearsay statements of the debtor's fellow townsmen rather than make any indepen-

dent search for property of the debtor? To recognize the proposed exception would be to abolish the rule.

■ Nor does the death of the judgment creditor approximately one year after the entry of judgment excuse the failure of his heirs and representative to comply with section 681, other than as provided in section 353 of the Code of Civil Procedure. The latter section has no application to the facts of this case and the successors in interest of the judgment creditor were charged with the same duty as the plaintiff in the action to make some investigation concerning the collectibility of the indebtedness within the five-year period.

The order is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., Traynor, J., and Schauer, J. pro tem., concurred.

Respondent's petition for a rehearing was denied **January 7, 1943.**