[Civ. No. 14497. First Dist., Div. One. Dec. 21, 1950.]

THEODORE MAGUIRE et al., Respondents, v. EDWARD J. CORBETT, Appellant.

W. Frank Butters for Appellant.

Hardy, Carley & Brenner for Respondents.

WOOD (Fred B.), J.—Defendant Edward J. Corbett appeals from an order directing that execution issue after five years from entry of judgment.

The judgment was rendered May 12, 1939, for damages in the sum of $1,665.15 in favor of plaintiffs and respondents Theodore, Rita, Bert, and Beverly Maguire, against defendant and appellant Edward J. Corbett, also known as Edward

J. Korbutt, and his father, defendant Felix K. Korbutt, also known as Felix K. Corbett.

On October 31, 1949, respondents filed a notice of motion for an order directing that execution issue. After hearing, upon affidavits and other evidence, the court, on December 5, 1949, granted the motion by an order which recited that the "judgment remains wholly unsatisfied, that plaintiffs have been unable prior to this time to find property of the defendants in this state which might be applied to the satisfaction of said judgment, and that there is now in this state property of the defendants subject to execution which may be seized to satisfy said judgment."

Appellant assigns as error that the evidence is insufficient to support the order. He asserts that the affidavits of respondent Theodore Maguire contain statements based on hearsay and mere conclusions, and that many of his statements are directly controverted by other statements in his and other affidavits, and that all of such statements should be given little or no weight or be entirely disregarded.

The record does not indicate that at the hearing of the motion, or at any time prior to the filing of his opening brief upon this appeal, appellant objected to any portion of any of respondents' affidavits upon the ground of hearsay or upon any other ground. It is too late now to object that they contain statements which are hearsay or which amount to mere conclusions. (*Fallon* v. *Fallon*, 86 Cal.App.2d 872, 873-874 [195 P.2d 878], and cases cited.) *Hatch* v. *Calkins*, 21 Cal. 2d 364 [132 P.2d 210], upon which appellant relies, is consonant with this principle, for the debtor in that case made timely objection to hearsay statements in the creditor's affidavits. As to conflicts in the evidence, it is the function of the trial court, not of an appellate court, to resolve them. (*John P. Mills Org.* v. *Shawmut Corp.*, 29 Cal.2d 863, 865 [179 P.2d 570], and *Fuller* v. *Lindenbaum*, 29 Cal.App.2d 227, 230 [84 P.2d 155].)

Appellant also directs attention to the fact that respondents' affidavits narrate efforts of respondents to locate the defendants and their property after, as well as before, the expiration of the five-year period after entry of the judgment, and claims that nothing which happened after the five-year period is competent in the consideration of this motion. That is not correct. A judgment creditor must show that during both periods he exercised diligence in seeking to en-

force his judgment. (*Butcher* v. *Brouwer*, 21 Cal.2d 354, 358 [132 P.2d 205].)

The applicable statute is section 685 of the Code of Civil Procedure. It declares that a judgment "may be enforced or carried into execution after the lapse of five years from the date of its execution, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code." (Section 681 declares that the party in whose favor a judgment is given "may, at any time within five years after entry thereof, have a writ of execution issued for its enforcement"; tolled by such period of time as execution is stayed or enjoined by judgment or order of court or by operation of law.) Section 685 then states that "The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion."

This means that a court may give such a creditor an execution only if "during the five years following entry of judgment, he exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time," and, even though he satisfies the court that he proceeded with due diligence during the five-year period, "the court may still deny him its process if the debtor shows circumstances occurring subsequent to the five-year period upon which, in the exercise of a sound discretion, it should conclude that he is not now entitled to collect his judgment." (*Butcher* v. *Brouwer, supra*, 21 Cal.2d 354, 358.)

It appears from the affidavits of respondent Theodore Maguire that in September, 1939, respondent notified the State Department of Motor Vehicles that the judgment had not been satisfied, pursuant to which defendants' privilege of operating vehicles was suspended. On ·December 12, 1939, respondents recorded an abstract of the judgment in Santa Clara County, where the defendants then resided; that respondents were then unable to locate any property of defendants which might be subjected to said judgment; that from the time of the judgment until the time of a divorce between Felix and his wife in 1944 affiant caused the tax rolls of Santa Clara County to be searched each year, which search disclosed no property other than their residence at 470 Williams Street, Palo Alto, which could not be levied upon because it was home-

steaded. In evidence are abstracts of a 1927 deed of trust on that property to secure $2,000, and a 1938 homestead reciting $2,500 as the value of the property.

Affiant Maguire states that after recording the abstract of judgment respondents continued to search for property of defendants until April, 1943, when a writ of execution was issued and delivered to the Palo Alto constable for service, and returned unsatisfied. On May 11, 1944, respondents commenced an action (No. 60042, Superior Court, Santa Clara County) against the defendants based on the judgment, summons in which was delivered May 16 to the constable at Palo Alto with instructions to serve on the defendants and he located the wife of defendant Felix K. Corbett at 470 Williams Street, Palo Alto Township, Santa Clara County, but was unable to locate either of defendants. These statements are corroborated by the constable's affidavit, in which he states that on April 29, 1943, he received a writ of execution in this action with instructions to make a demand levy upon defendant Felix K. Korbutt and to attempt to ascertain the address of defendant Edward J. Corbett; that he went to 470 Williams Street, Palo Alto, the reported residence of Felix, where he found and talked with the wife of Felix; that though he tried to obtain from her the whereabouts of both defendants he was unable to learn the whereabouts of either of them. The constable further states that he received summons in action No. 60042 with instructions to serve the defendants; that he again found and talked with the wife of Felix at 470 Williams Street, Palo Alto, but was unable to ascertain the whereabouts of either of the defendants; that during approximately two years thereafter and at the request of the then attorney of respondent, affiant made numerous attempts to discover one of said defendants at said address and spoke with the wife of Felix on several occasions; that at no time was affiant able to ascertain the whereabouts of said defendants.

Affiant Maguire states that during each year after rendition of the judgment, respondent Theodore Maguire has attempted to locate defendants and property of defendants which might be applied to satisfaction of the judgment; that during each year after the judgment he attempted to keep track of the assets and activities of defendants through inquiries of Mr. and Mrs. Willie J. Kelley, who were neighbors of defendants at the time the cause of action arose and who resided at 420 Williams Street, Palo Alto. From such inquiries affiant learned that Felix was employed at the Crystal Palace Plunge

and later as an elevator operator at an unknown address in San Francisco and was seen in Palo Alto only rarely on Sundays. From such inquiries affiant was unable to learn where Felix was staying other than he was staying in San Francisco. This is corroborated by Mr. Kelley who in his affidavit states that he lives near the property formerly occupied by Felix K. Korbutt and Edward J. Corbett, father and son; that during the 10-year period last past respondent Theodore Maguire has inquired of affiant, at intervals and at least once each year, as to the activities and whereabouts of Felix and Edward; that on none of said occasions has affiant told Maguire or been able to tell him the exact address of Felix or of Edward; that on several such occasions affiant informed Maguire he understood that Felix and Edward were living in San Francisco.

Maguire states that in 1939 and 1940 respondents attempted to locate Felix at the Crystal Palace Plunge in San Francisco where he reputedly was employed but was unable to obtain information there other than that Felix was not there and later that he was not known there; that since the judgment he has searched for Felix K. Korbutt in each San Francisco telephone book that has been issued.

Maguire states that, prior to the trial of the action, he had, through his attorneys, correspondence with the attorney who represented defendants and that attorney represented that the only possible source of settlement of the claim was Felix Korbutt; affiant through his attorneys verified through independent sources that Edward was only partially self-supporting and owned no assets; from his inquiries of Mr. and Mrs. Willie J. Kelley, affiant learned that Edward J. Corbett had reputedly moved to San Francisco, and in 1945 learned that Edward was reputedly living in the Sunset district of San Francisco; that since being informed that Edward was residing in San Francisco affiant has searched the San Francisco telephone directory for Edward; that since 1945 he has searched the Palo Alto telephone directory for the defendants, at least once each year; informed that a Mrs. E. J. Corbett lived at 495 Twelfth Avenue in San Francisco, affiant in October, 1945, caused the sheriff to attempt to serve summons at that address, but it was returned unserved because neither of the defendants resided or could be located there; that in March, 1949, affiant learned of an Edward J. Corbett at 324 Thirteenth Street, Seal Beach, California, and caused investigation to be made, but the investigation failed to disclose either of the defendants or any property of either of them. In September,

1945, affiant Maguire inquired of the State Department of Motor Vehicles in an effort to ascertain the whereabouts of both defendants and whether any vehicle was registered in the name of either, which inquiry disclosed no vehicle so registered, nor the whereabouts of either defendant. In 1947 and 1948, affiant searched the tax rolls of San Francisco for the names of both defendants, but neither name appeared thereon. At all times since the action arose, Thomas Maguire has resided in San Francisco; never lived in San Mateo County.

According to the affidavit of Marilyn Corbett, wife of Edward, he lived at 470 Williams Street, Palo Alto, prior to their marriage on July 5, 1940; thereafter, in Brisbane, San Mateo County, until May 1, 1942, when they purchased in joint tenancy real property at 902 Ruth Avenue, Belmont, San Mateo County, under contract whereby deed thereto would be delivered upon completion of down payment, which payment was completed in June, 1943, and deed transmitted to a title company for recordation in July, 1943, and recordation made on March 7, 1944; that on August 10, 1942, telephone service was installed in the name of Edward J. Corbett at said Belmont address, and has been continuous to date, and his name has been listed continuously in the San Mateo County telephone book since the second publication thereof in 1942 or the first publication in 1943; that Edward registered with his draft board in San Mateo County in 1940; that he was employed by Western Pipe and Steel Company, South San Francisco, from July 5, 1940, to September 23, 1943, when he entered the merchant marine and served therein until December, 1944; that from January 1945 to September 24, 1947, he was employed by various employers in San Francisco and on the Peninsula, including Western Pipe and Steel Company at South San Francisco, and was a member of Boiler Makers, etc., Union Local 6, San Francisco; that from January 1 to July 1, 1946, he was in partnership with William McBurnie in the tree surgery business in San Mateo County under the name Corbett & McBurnie and during that time advertised in the San Mateo Times, using the firm name; that on September 24, 1947, Edward went to Arabia where he has been employed except for the period April, 1949, to July, 1949; that all during the married life of Edward and Marilyn they had charge accounts in San Francisco at Roos Bros., and City of Paris; and that at all times Josephine Corbett, mother of Edward, lived at 470 Williams Street, Palo Alto, and knew the whereabouts of Edward.

This record discloses no abuse of discretion by the trial court in impliedly finding that the respondents exercised due diligence in locating and levying upon property of the debtors during the five years after entry of judgment, and subsequently. Their search was in the county where the defendants resided during the trial and where appellant resided for over a year after the trial, until available information indicated that appellant and his father were in San Francisco, and search there proved unavailing. The inquiries which they made of appellant's mother, through the constable, during the third to seventh years, and of the neighbors during each of the 10 years, though not fruitful, represented the tapping of available information, and the negative results thus obtained may well have discouraged a wider, more extended search than that which respondents did conduct. No search of public records during the first five years, except the very last two months of that period, would have disclosed property in appellant's name, for the June, 1943, deed to his Belmont property was not recorded until March 7, 1944. Incidentally, that was after the tax lien date in 1944, suggesting that the property would not appear in appellant's name on the San Mateo County tax rolls until the following tax year. Also, until some time had elapsed, it evidently did not appear to the respondents fruitful to make as vigorous a search for appellant and his assets as for the father, Felix, and his assets, in view of the information obtained prior to the trial, from appellant's attorney and other sources, that Edward was only partially self-supporting and had no assets. The fact that appellant was employed and had charge accounts did not of itself cast upon the respondents a duty to make inquiries concerning him of merchants and employers up and down the Peninsula, from Palo Alto to San Francisco, on a blind search for him.

This case differs from *Beccuti* v. *Colombo,* 21 Cal.2d 360 [132 P.2d 207], *Hatch* v. *Calkins,* 21 Cal.2d 364 [132 P.2d 210], and *Bank of America* v. *Williams,* 84 Cal.App.2d 562 [191 P.2d 17], upon which appellant relies. In the Beccuti case, it appeared that for some 13 years after judgment the debtor owned real property in the county of his residence, the county in which the judgment was rendered, and examination of the tax collector's and tax assessor's records would have shown property valued in excess of the judgment; the debtor's name and address appeared in telephone and city directories in that county; and he owned trucks and pleasure automobiles,

registered with the State Department of Motor Vehicles. Those facts indicated that if the creditor had exercised even slight diligence he would have discovered property subject to execution. In the Hatch case, the application for writ of execution was made 29 years after judgment, and it appeared, among other things, that the judgment creditor knew that the debtor was in Truckee, and traded at his stores; that the debtor owned and operated a business and owned real property in Truckee; and a check of the assessor's index would have revealed the existence of a lot which stood in the debtor's name from 1911 to 1916. The creditor was not excused, from making an investigation, by town gossip that the debtor was without assets. Appellant herein invokes the Hatch case and says that Maguire could not excuse his lack of a more extended investigation upon the basis of hearsay information received from Corbett's attorney at the time of the trial and later from the neighbor, Kelley. There are several differences between the two situations. In the Hatch case, but not in this case, the debtor objected to the hearsay evidence at the time of the hearing in the trial court. Information given by the debtor's own attorney and by the neighbor was reasonably more authentic than mere town gossip. Also, the creditor in this case pursued other available sources of information, which the creditor in the Hatch case did not. In the Bank of America case (an affirmance of an order denying the writ, as distinguished from the Beccuti and Hatch cases, in each of which an order granting the writ was reversed), it was deemed not an abuse of discretion by the trial court to deny execution after five years when it appeared that the creditor was informed that the debtor resided in San Francisco and maintained an office there but the creditor made no check of public records in that county and relied upon a hearsay report that the debtor was without assets.

The facts of the instant case are similar in certain respects to the facts in *Terrill* v. *Shepherd,* 57 Cal.App.2d 290 [134 P.2d 491], and *Helvey* v. *Castles,* 73 Cal.App.2d 667 [167 P.2d 492], in each of which it was held that the record did not disclose abuse of discretion by the trial court in ordering execution after five years. In the Terrill case, the creditor from time to time searched the records of the county of the debtor's residence, and employed an investigator to make inquiries and find assets, without discovering assets, and, within about three years, the debtor acquired an interest

in certain notes secured by deeds of trust but the deeds of trust were not recorded until nearly six years after entry of judgment. In the Helvey case, it appeared that the creditor lost track of the debtor about one year after judgment; that his search of public records in Los Angeles and 20 other counties and of the State Department of Motor Vehicles for 10 years after judgment disclosed no assets; and that he filed suit for renewal within five years but was unable to locate the debtor.

As the record discloses no abuse of discretion by the trial court, the order is affirmed.

Peters, P. J., and Bray, J., concurred.