[Civ. Nos. 16522, 16960.   First Dist., Div. One.   Sept. 27, 1956.]

HERMINE FORD, Respondent, v. THOMAS FORD, Appellant.

(Consolidated Cases.)

Cameron & Fouchee, Philip J. Doyle and Stark & Champlin for Appellant.

Varnum Paul and Abraham Setzer for Respondent.

PETERS, P. J.—Appeal numbered 1 Civil 16960 is from an order of Judge Meikle of the superior court granting respondent's motion for issuance of execution after five years on a judgment for child support. Appeal numbered 1 Civil 16522 is from an order of Judge Sweigert directing appellant to pay respondent's attorney fees and costs incurred by her in defending the appeal.

Appellant and respondent were formerly husband and wife. They were divorced in 1936. In the interlocutory, dated May 4, 1936, the appellant was ordered to pay $30 a month for the support of the two minor children of the parties. The final, granted May 14, 1937, contained a similar provision. No payments of any kind were made pursuant to these orders until November of 1943. In October of 1943 respondent sought the help of the district attorney of San Mateo County and as a result of his efforts appellant made the payments for November and December, 1943, and for January, 1944. In December of 1943, respondent, by letter, requested appellant to increase the payments, but received no reply from appellant.

In April of 1944 respondent had appellant cited for contempt, and moved to modify the final decree by increasing the child support allowance. On May 31, 1944, the prior support order was amended by stipulation by increasing the $30 payment to $60. ▇ This order contained the following provision:

"It is further ordered, adjudged and decreed that so long as defendant complies with the order herein made for the support of said children, no recourse shall be had against said defendant on account of the arrears of maintenance and support."

Appellant failed to make the required payments for November and December, 1944, and January of 1945, but, after the

issuance of an order to show cause, he made the payments in February of 1945 and the contempt proceeding was abandoned. Apparently, appellant thereafter, and until November of 1950, made the payments called for by the May, 1944, order. On November 22, 1950, appellant secured an order terminating his obligation to pay support for the children on the showing that one, Beverly, was 18 and married, and the other, Helen, was self-supporting. This termination order contained the following provision:

"It is further ordered, adjudged and decreed that this order does not absolve the defendant from any arrears for alimony, support and maintenance which may have accrued to the date hereof, and that this order is without prejudice to the right of the plaintiff at any future time to apply for support and maintenance of Helen Thomasina Ford, minor child of the parties hereto."

It should be mentioned that in October, 1950, just before the request for the termination order was filed, appellant offered respondent $200 in complete settlement of all his obligations to her for child support. This offer was rejected.

In May of 1953 respondent filed a motion under section 685 of the Code of Civil Procedure for an order directing issuance of execution more than five years after entry of judgment, thus attempting to collect arrearages between 1936 and 1944, and supported her motion by the required affidavit. Appellant filed no counteraffidavit. Respondent's affidavit sets forth several excuses for her failure to execute on the judgment prior to 1943:

1. Execution would have been futile because appellant could not have made the payments. In support of this allegation respondent refers to an averment to that effect in an affidavit of appellant filed in the May, 1944, proceeding, and contends that she had no information contrary to this averment;

2. That the equities favor respondent because appellant has twice remarried since his divorce, respondent was forced to use the contempt process in 1943, and in the same year unsuccessfully sought to get appellant to pay something on arrears, respondent secured the increased allowance in May, 1944, and instituted contempt proceedings early in 1945 to compel compliance, appellant recognized the indebtedness for past support in October of 1950 by offering respondent $200 in settlement of the past due arrearages, and in 1950 the termination order by stipulation contained the provision quoted, *supra,* in reference to arrearages;

3. That since 1936 appellant has resided in San Diego, more than 500 miles from respondent's abode, and respondent was financially unable to investigate appellant.

On February 15, 1954, the trial court granted the motion for the issuance of an execution after more than five years from the entry of judgment in the amount of $2,730 principal, and $2,696.41 interest. The first appeal is from this order.

After appellant filed his appeal, respondent sought an order to compel appellant to pay her attorney's fees and costs incurred in opposing the appeal. The trial court ordered appellant to pay $250 as attorney's fees and $150 as costs. The second appeal is from this order.

On the first appeal, there are several questions presented. The first is whether or not the stipulated judgment of May, 1944, resulted in permanently extinguishing respondent's right for arrearages under the 1936-1937 orders. The trial court has found that the parties did not stipulate that the obligation to pay arrearages was to be absolved, that the judgment of May, 1944, did not so order, and that the November, 1950, order so interpreted the May, 1944, order. We are of the opinion that this is a reasonable and proper interpretation.

Appellant argues that the May, 1944, judgment, properly interpreted, amounted to a promise that on condition appellant complied with the order, respondent would not seek recourse against appellant for the arrearages, and that this included a promise not to seek execution; that when he fully performed, the liability for arrearages was erased. This is a strained unnatural construction of the 1944 order. The more reasonable construction of the provision that respondent would not seek recourse against appellant for so long as he complied with the order is that respondent promised not to seek to enforce her rights for past due support payments during the period appellant was making the increased payments, but that she did not waive her rights to these past due payments. This is the interpretation the trial court has placed on the order and we think that interpretation is the proper one.

The second point involved on the first appeal is more difficult. It is whether the trial court properly ordered execution to issue after five years upon the showing made by respondent. The power of the court to order execution more than five years after the entry of judgment is to be found in section 685 of the Code of Civil Procedure. That section provides: ''In all cases the judgment may be enforced or

carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion.''

This section has been a fruitful source of litigation. In December of 1942 the Supreme Court decided three cases trying to reconcile some of the then conflicting decisions interpreting the section, and to clarify its meaning. The first of these opinions is *Butcher* v. *Brouwer*, 21 Cal.2d 354 [132 P.2d 205]. In that case the trial court granted the request for an execution more than five years after entry of the judgment. The Supreme Court affirmed. In discussing the history and development of section 685 the court stated (p. 357) : ''Section 685 of the Code of Civil Procedure, before it was last amended, provided in part as follows: 'In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of court, upon motion. . . .' As so worded, it has many times been construed by the appellate courts which held that although the enforcement of a dormant judgment by execution issued in response to the creditor's motion was a matter within the sound discretion of the trial court [citation], mere lapse of time was not in itself a sufficient ground for the denial of the motion. [Citations.] Nor did the failure of the judgment creditor to make any effort to enforce his judgment within five years after its entry, or at a later time, afford a ground for the denial of the motion. [Citations.] And the motion was properly granted although, during the five years following the judgment, the judgment debtor possessed property which could have been discovered and subjected to the judgment. [Citations.] As a practical matter, therefore, by this construction of the statute a creditor, almost as a matter of right, might obtain an execution many years after the five-year period fixed by section 681.''

The court then quoted the 1933 amendment to the section. This amendment added the requirement of notice to the judgment debtor, required the motion to be accompanied with an affidavit showing the reasons for failure to comply with section 681 of the Code of Civil Procedure, and concluded with the language: ''The failure to set forth such reasons as shall,

in the discretion of the court, be sufficient, shall be ground for the denial of the motion.'' The Supreme Court was of the opinion that these amendments had materially changed the meaning of the section. At page 358 the court stated: "Considering the strict construction against the debtor which the appellate courts had placed upon section 685 before the change and the requirements added at that time, it is clear that the principal object of the new enactment was to place upon a creditor seeking to enforce a judgment more than five years after its entry, the burden of showing why he was not able to satisfy his claim within the statutory period during which he is entitled to an execution as a matter of right. . . . in view of the legislative and judicial history of section 685, its present provisions should be construed as authorizing the court to give a creditor an execution only if, during the five years following entry of judgment, he exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time. And even though the creditor may have satisfied the court that he has proceeded with due diligence to enforce his judgment under section 681, the court may still deny him its process if the debtor shows circumstances occurring subsequent to the five-year period upon which, in the exercise of a sound discretion, it should conclude that he is not now entitled to collect his judgment.''

In the second of the three cases—*Beccuti* v. *Colombo Baking Co.*, 21 Cal.2d 360 [132 P.2d 207]—the Supreme Court, after restating many of the rules stated in the Butcher case, and in reversing an order granting the execution, stated (p. 363): "But if the facts show of a certainty that, had the judgment creditor exercised even slight diligence in making inquiry concerning the circumstances of the judgment debtor, he would have discovered property subject to execution, the exercise of sound discretion requires the court to deny the motion.''

The court then refers to certain facts relevant to this issue, and then continues (p. 363): "Under these circumstances it is apparent that a resort to any of the customary sources of credit information would have disclosed property of the judgment debtor, and if the slightest effort had been made by the creditor within five years after the rendition of the judgment to locate property belonging to Lercari, much more in value than the amount necessary to satisfy it would have been

discovered. Accordingly, the trial court abused its discretion in making the order appealed from.''

In the third case—*Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210]—the Supreme Court also reversed an order granting the execution, even though the evidence showed the debtor attempted to conceal some of his assets from his creditors. In the course of its opinion the court stated (p. 371): ''This evidence clearly shows that the creditor did not exercise even slight diligence in endeavoring to collect his judgment. But was he excused from making an investigation when there was town gossip in the community where the debtor resided that he had no assets? In other words, does the amendment to section 685 contemplate that a judgment creditor may rely upon the hearsay statements of the debtor's fellow townsmen rather than make any independent search for property of the debtor? To recognize the proposed exception would be to abolish the rule.''

The holdings in these three cases are reasonably clear. None of them involved a continuing or accruing type of judgment, such as a judgment for support. In 1946 the Supreme Court was presented with such a judgment in the case of *Lohman* v. *Lohman*, 29 Cal.2d 144 [173 P.2d 657]. The justices split 3-2-2 in their conclusions.

In the Lohman case an ex-wife attempted to file a claim against the estate of her ex-husband, deceased, for alimony and support. The interlocutory was entered in 1925, and the husband died in 1944. The husband had made a few payments during his lifetime. The wife had granted him numerous indulgences and he had assured her that she would get her money. The trial court denied the issuance of the execution.

Three justices—Edmonds, Gibson and Traynor—held that under section 681 of the Code of Civil Procedure the wife was entitled to an execution as a matter of right as to those payments accruing within five years of the filing of the wife's claim, but that as to those payments accruing between the date of the entry of judgment and up to five years from the date of her claim, she had not exercised the due diligence required by law, and that as to these payments she was barred. Two justices—Carter and Shenk—agreed that the wife was entitled to execution for the payments accruing during the five-year period immediately preceding the filing of the claim, but also were of the opinion that the facts alleged showed due diligence on her part, and that she was entitled

to an execution for the entire period. The other two justices —Schauer and Spence—were of the opinion that the wife had not exercised due diligence in the five-year period immediately subsequent to judgment, and that such lack of diligence barred her from an execution for the entire period.

This same view was expressed by these two justices in dissents in *Di Corpo* v. *Di Corpo*, 33 Cal.2d 195 [200 P.2d 529]. In the majority opinion in that case, which was also a support case, the other five justices affirmed an order of the trial court denying execution for the period prior to five years from the motion of the wife on the ground that she had failed to show due diligence, but reversed the trial court as to the five years immediately preceding the motion (the trial court had recalled an execution for this period), holding that, as a matter of right, she was entitled to execution for this five-year period.

If the rule adopted by a majority of the Supreme Court justices in the above cases be applied to the instant case, it is quite clear that in May, 1944, when the order modifying the support order was entered, the respondent, as a matter of right, was entitled to execution for those payments which had accrued within five years of the time of her motion. This right she agreed to immediately forego, respondent agreeing not to enforce this right so long as appellant continued to pay the increased payments. But, as already pointed out, payment of the increased payments did not wipe out the right to execution to enforce payments of arrearages accrued prior to the date of the order, but simply relieved appellant of the obligation to pay the increased support and past due arrearages at the same time. This being so, the necessary legal effect of the 1944 decree was to preserve respondent's rights in connection with the arrearages as they existed at that time. Thus, it follows, that respondent was entitled, as of right, to execution to enforce payment of arrearages accrued between May, 1944, and five years prior thereto.

But the trial court ordered execution issued for the entire period, May, 1936, to May, 1944. For the period prior to May, 1939, the propriety of this order depends upon whether respondent made a showing of due diligence for the period prior to 1939. We do not think that respondent made any such showing.

In the instant case, prior to issuing the order for execution for the entire period, the trial judge prepared and filed a memorandum opinion. In the course of reviewing the facts

the judge stated in that opinion: "It does not appear that plaintiff took any steps to enforce collection under the terms of the decree until 1943." Later in the opinion it is stated: "The record does not show that the plaintiff took any steps toward the enforcement for the first seven years following the entry of judgment." But, in spite of this, the trial judge was of the opinion that due diligence during this period was exercised because of the distance appellant was living from respondent, respondent's financial inability to investigate assets, and because appellant in his affidavit in the 1944 proceeding averred that between 1936 and 1942 he was unable to make the payments.

Thus, it clearly appears that between 1936 and 1943—a period of seven years—the respondent did nothing at all to enforce her judgment. ■ The reasons given by her—she lived 500 miles from appellant; she was without funds to pay for an investigation of his assets—are not sufficient to show diligence. It is not averred that she did not know where appellant resided, or that, during such period she even wrote him requesting payment. No attempt to secrete himself was made by appellant. During this period no attempt to institute contempt proceedings was made. The averment in appellant's affidavit in the 1944 proceeding indicating that any prior attempt to collect would have been futile cannot serve to revive a judgment already barred. The inexcusable inactivity took place between 1936 and 1943. Respondent did not know until 1944 that any prior effort to collect would probably have been unsuccessful.

■ Although the trial court undoubtedly has a wide discretion in such cases, since the 1933 amendment to section 685 of the Code of Civil Procedure it is our opinion that it was an abuse of discretion to order issuance of the writ of execution for the period from May, 1936, to May, 1939. Thus, the order involved on appeal Number 1 Civil 16960 was erroneous, and must be reversed.

In appeal numbered 1 Civil 16522 the question presented is whether the trial court had the legal power to grant to respondent her attorney's fees and costs for the defense of the appeal from the order granting execution. We think that the trial court possessed this power, and that the order was proper.

Appellant contends that because his liability for support of the children had been terminated on November 22, 1950, the divorce and support action were not thereafter pending,

and that, as a result, the court's power to grant fees and costs had terminated. The argument is without merit. Section 137.3 of the Civil Code, added in 1951 and as amended in 1953, provides, in part: "In respect to services rendered after the entry of judgment, upon application by an order to show cause or motion, the court may award such costs and attorney's fees as may be reasonably necessary to maintain or defend any subsequent proceeding therein, and may thereafter upon application as aforesaid augment or modify any award so made." In *Dexter* v. *Dexter*, 42 Cal.2d 36 [265 P.2d 873], the Supreme Court was called upon to determine the nature of certain payments provided for in an agreement between the parties which had been incorporated in a divorce decree. The Supreme Court concluded that the payments were an integral part of the property division between the parties and so were not subject to modification, and also allowed the wife costs and attorney's fees on appeal. The husband contended that since the payments were not subject to modification, the court had no power to order costs and attorney's fees—a contention similar to the one advanced by appellant in the instant case. The court disposed of the contention as follows (p. 44): "Defendant contends that if the payments are not subject to modification, the court had no power to order him to pay plaintiff's costs and attorney fees on appeal. The trial court had jurisdiction, however, to determine in this proceeding the character of the payments involved, and accordingly, the divorce action is still pending within the meaning of section 137.3 of the Civil Code. [Citing two cases.] Since plaintiff did not waive any right she might have to attorney fees and costs in her agreement and no abuse of discretion has been shown, the order awarding costs and attorney fees on appeal must be affirmed."

On similar reasoning, in the instant case, in spite of the termination order, the trial court still had jurisdiction to enforce its order for the support of the children. This being so, under section 137.3 it had power to award the wife costs and attorney's fees.

For the foregoing reasons, in appeal 1 Civil 16960, the order appealed from is reversed, with instructions to the trial court to order execution to issue under section 681 of the Code of Civil Procedure for the five-year period prior to May, 1944; on appeal numbered 1 Civil 16522 the order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.