[Civ. Nos. 16117, 16118.   Second Dist., Div. Two.   Mar. 25, 1948.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant, v. J. A. WILLIAMS, Respondent.

. Hugo A. Steinmeyer, G. L. Berrey and John E. Walter for Appellant.

Courtney L. Moore for Respondent.

MOORE, P. J.—The question for decision in these consolidated appeals is whether such due diligence had been employed during the five years following entry of judgment as required the trial court in the exercise of a sound discretion to order the issuance of execution some 13 years after, date of judgment.

Two judgments were entered by the Superior Court of Los Angeles County in favor of appellant and against certain named respondents, one on July 15, 1932, the other March 21, 1934, aggregating about $50,000. Applications for execution under section 685 of the Code of Civil Procedure were made in both cases in January of 1947, on identical moving papers and they were denied March 6, 1947. They are treated here as one action.

Only the above-mentioned judgments are involved in the appeals herein, but because of certain arguments of appellant it is essential here to state that in June, 1933, the bank obtained judgment against J. A. Williams, herein referred to as respondent, and one W. F. Dunn in the Superior Court of San Francisco which was twice renewed, the last judgment being for the sum of $4,169.30. Following the issuance and *nulla bona* return of execution on the San Francisco judgment and a supplemental examination of the debtor Dunn in February of 1945, and his release from liability for a consideration, an alias execution issued from the same court and an order for the examination of Williams ensued. The latter thereafter telephoned appellant's San Francisco office that he was ill and had no property, whereupon the proceeding there was dismissed.

Prior to 1933, a judgment creditor was free to ask for the issuance of execution (Code Civ. Proc., § 681) on any unpaid judgment, whatever its age. In that year section 685 was added to the Code of Civil Procedure as follows:

"In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The

failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion . . .''

Within the five-year period of the life of the judgments herein appellant took only four steps to discover property of respondent, namely: (1) It inquired by letter dated September 22, 1932, to the Capital Company in San Francisco with reference to respondent's financial status. The reply from the correspondent received in the same September was: ''Williams is well known to us . . . unfortunately, we are told he lost absolutely everything. His address is 41 Sutter Street, San Francisco.'' (2) Appellant's vice president Groner at Los Angeles checked or caused to be checked ''Daily Notification Sheets'' for instruments transferring real property recorded each day. (3) Also, he checked from time to time the index to the Los Angeles County assessment roll and (4) investigated the ownership of property standing in the name of Lenore Williams, only to learn that she had long been divorced from respondent and that the involved property was her separate estate and heavily encumbered. By the letter from the Capital Company it was made clear that respondent had an office at 41 Sutter Street, listed in both city and telephone directories, with which Mr. Groner was familiar. The checking of the realty transfers and assessment rolls of Los Angeles County was done in making a routine check of some 6,000 bad accounts of the bank there. Within the same five years the Los Angeles bank did not by any means whatever communicate with respondent, or issue an execution, or even attempt to conduct a supplemental examination. In brief, for eight years after entry of judgment no serious effort was undertaken by appellant to effect collection. Finally, in 1940, it wrote a letter to the Motor Vehicle Department and in 1944, wrote to respondent.

In the course of its argument appellant lays store by the acts done by the San Francisco bank to enforce payment of its judgment. But the steps taken at San Francisco cannot avail appellant in aid of its attempt now to enforce the Los Angeles judgments. The Los Angeles officials of appellant are not shown to have had any knowledge of the events at San Francisco. Certainly no delay or hesitancy at Los Angeles is shown to have resulted from information received from the north or to have caused the Los Angeles bank to desist from the issuance of execution under section 681 or

from conducting a supplemental examination. Not only did the San Francisco office check (1) assessment rolls in the counties of respondent's residence and place of business, (2) publications of realty transfers, (3) automobile registrations and (4) inquire of respondent as to his ability, but subsequent to the five-year period it twice renewed its judgment. Such diligence was unknown to the Los Angeles office. The prompt steps taken by the San Francisco branch, therefore cannot inure to the benefit of the Los Angeles office.

The affidavit for execution under section 685 must show due diligence under the circumstances of plaintiff's case. (*Beccuti* v. *Colombo Baking Co.*, 21 Cal.2d 360, 363 [132 P.2d 207]; *Hatch* v. *Calkins*, 21 Cal.2d 364, 371 [132 P.2d 210]; *Cochrane* v. *Cochrane*, 57 Cal.App.2d 937, 939 [135 P.2d 714].) The judgments herein are based upon two secured notes of respondent to another bank which had been acquired by appellant at the nadir of the depression. Respondent was one of some 6,000 insolvents in debt to appellant's Los Angeles bank. Naturally, under the existing conditions of widespread insolvency they did not stir the hopes of the bank. It is but a step to the deduction that the Los Angeles officials did not look to the San Francisco office to supply the "due diligence," an essential requirement of the bank's right to process under section 685. That it did not do so is evidenced positively by a want of proof thereof.

Notwithstanding respondent's home and field of operations were some 450 miles from Los Angeles, appellant contends that its searching of assessment rolls and indices to property transfers was evidence of its diligence in its aims to enforce payment by him. If the mere examination of public records in the county of the debtor's residence in the hope that he "will acquire property in his own name constitutes a minimum of effort" (*Helvey* v. *Castles*, 73 Cal.App.2d 667; 674 [167 P.2d 492]), then what words will characterize such examination by a judgment creditor residing and operating in a distant county in which the debtor never resided or trafficked in realty? A serious intention to pursue its debtor would have induced some action indicative of diligence. But neglect to obtain an execution under section 681 or to make an examination of the debtor and merely to read, through a course of some 14 years as a routine matter, the lists of assessments and transfers in Los Angeles County is evidence of no diligence at all. The letter to the Capital Company is not

proof of diligence. Although the reply thereto indicated the insolvency of respondent and the recency of the judgment, not an act was done to verify the hearsay report of appellant's correspondent.

Since there was no diligence at all on the part of appellant there is no question of the trial court's abuse of discretion in denying appellant's motion left for determination.

But if any doubt should remain of the correctness of the order in denying the issuance of the writ one needs but to be reminded that the factual determination by the trial court of issues tried by affidavits in which there is a conflict is final. (*Doak* v. *Bruson*, 152 Cal. 17, 19 [91 P. 1001]; *Brainard* v. *Brainard*, 82 Cal.App.2d 478 [186 P.2d 990].) The standard of diligence fixed by the courts as the criterion by which the conduct of a judgment creditor is to be measured in proceedings under section 685 is the customary, usual, reasonable and diligent procedure which would be taken in the average law office to collect a judgment where the records reveal no assets. (*Terrill* v. *Shepherd*, 57 Cal.App.2d 290, 294 [134 P.2d 491].) Whether a court has abused its discretion in denying a motion under the section is established when it is shown that the court has exceeded "the bounds of reason, all circumstances before it being considered." (*Kosloff* v. *Kosloff*, 67 Cal.App.2d 374, 379 [154 P.2d 431].) In view of the facts above recited it cannot be maintained that the court below is guilty of such abuse.

The cases (*Mongerson* v. *Williams*, 64 Cal.App.2d 279 [148 P.2d 419] and *Troendle* v. *Clinch*, 74 Cal.App.2d 480 [169 P.2d 55]) cited by appellant as authority for its asserted due diligence are readily distinguished. In both are records of more than due diligence by the judgment creditors and of delays not caused by them. Within the five-year period, in both cases, every step was taken that was reasonably calculated to uncover the assets of the debtors. "Due diligence" had been exerted as shown clearly by the affidavits whereby the judgment creditors had complied with the requirements of the statute. The object of section 685 is to withhold execution upon a judgment after five years unless the applicant therefor alleges and proves satisfactory reasons showing why he was unable to enforce payment of his judgment within the statutory period; or that he has within the five years exercised due diligence to discover leviable assets of his debtor. (*Butcher* v. *Brouwer*, 21 Cal.2d 354, 358 [132 P.2d 205].)

The clear implication of the statute as well as of the court in the Butcher case is that if the trial judge is not persuaded by the affidavits of the plaintiff that the latter has exercised due diligence, or if he is convinced by the affidavits of the defendant that, notwithstanding such due diligence, circumstances have occurred subsequent to the five-year period upon which it should be held, in the exercise of a sound discretion that execution should not issue, then the plaintiff is not entitled to enforce his judgment.

Appellant's argument that respondent did not aver whether he had leviable assets during the five-year period, or whether he concealed his assets, is irrelevant. The statute requires the plaintiff to show that he has exercised due diligence. Naturally, if the plaintiff makes a showing that others have done the usual acts necessary to establish a showing of due diligence to the satisfaction of the trial court, and it appears therefrom that the defendant had no assets during the statutory life of the judgment, as was the situation in *Southern California Telephone Co.* v. *Damentein,* 81 Cal.App.2d 216 [183 P.2d 675], cited by appellant, it follows that the court will not demand that needless acts should have been done before ordering the issuance of execution under section 685. But no such situation was presented to the trial court in the instant action. It cannot justly be held that the hearsay letter of the Capital Company was the equivalent of four separate supplemental examinations and discharges in as many actions within the five-year period. (*Southern California Telephone Co.* v. *Damenstein, supra.*) There is no evidence of respondent's financial status during the five years, either that he concealed assets or had no assets. The bare averment that he is found to be in possession of some $25,000 in October, 1946, is not proof that he had or concealed any assets prior to the expiration of the first five years of the judgments. Moreover, since appellant's affidavits did not plead an excuse for its want of diligence it is in no position in the reviewing court to inject such plea. On the contrary respondent averred that while he had been interviewed by Mr. Grassens of the San Francisco office concerning payment of the San Francisco judgment, that official never once mentioned the Los Angeles judgments.

Appellant resorts without success to the popular doctrine of equity that one cannot be guilty of laches if by his delay in acting his antagonist was not prejudiced. This is strictly a legal proceeding which is prescribed by statute and

governed by a body of law which has grown out of the statute. *Long* v. *Long*, 76 Cal.App.2d 716 [173 P.2d 840], was an equity action to which the doctrine was applicable, but it is of no aid to appellant in the instant case.

Appellant's final contention is that if Williams was without assets he is not prejudiced thereby. The authorities cited (*Helvey* v. *Castles*, 73 Cal.App.2d 667, 675 [167 P.2d 492]; *Mohr* v. *Riccomi*, 14 Cal.App.2d 416 [58 P.2d 659]; *Ruddell* v. *Warne*, 68 Cal.App.2d 600 [157 P.2d 428]; *Troendle* v. *Clinch, supra; Butcher* v. *Brouwer, supra*), are distinguishable or became effective prior to *Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210], which determined that a creditor cannot rely upon hearsay statements that the defendant had no property.

The order in each case is affirmed.

Wilson, J., concurred.

McComb, J., deeming himself disqualified, did not participate in the foregoing opinion.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1948. Carter, J., and Traynor, J., voted for a hearing.