[Civ. No. 13816. First Dist., Div. One. Dec. 6, 1948.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. J. A. WILLIAMS, Appellant.

Courtney L. Moore for Appellant.

Erskine, Erskine & Tulley, Morse Erskine and Geo. D. Schilling for Respondent.

PETERS, P. J.—This is an appeal by J. A. Williams from an order granting a temporary injunction, and from an order denying the motion of Williams to dissolve and vacate the order granting the injunction. By this proceeding the Bank of America is seeking to have certain properties standing in the names of defendants M. L. Fruhling, Lester G. Loupe & Company, a partnership, or Ruth Loupe, executrix of Lester G. Loupe, a deceased partner, and a certain check for $26,215.96, declared to be the property of defendant Williams, and to have such property applied to the payment of two judgments obtained by the bank in Los Angeles against Williams in 1932 and 1934, totaling about $50,000, and on which no payments have been made. Based solely upon the allegations of the complaint, no affidavits having been filed or evidence offered by either side, the trial court enjoined the defendant partners and Ruth Loupe from paying to Williams any of the partnership assets, and restrained Williams and Fruhling from disposing of the interest of Williams in any of the described properties, real or personal. This original order was later modified so that it did not restrain the sale or disposal of any of the partnership assets or of the real

property standing in the name of Fruhling, but the modified order provided that if such property was sold the proceeds should be subject to the previous order preventing the defendants from paying over any of the proceeds to Williams, and preventing Williams from disposing of any property received from the partnership. Williams demurred generally and specially to the complaint, and moved to strike certain of its provisions. His demurrer was overruled and his motion to strike denied.

Before discussing the allegations of the complaint some reference must be made to the law applicable to this type of proceeding. It is, of course, permissible to grant an injunction based solely upon the allegations of a verified complaint. (Code Civ. Proc., § 527.) If the complaint does not state a cause of action, however, it is improper to grant an injunction based thereon. But this is not the only test that must be applied. Where the complaint is the sole basis of the order, and the complaint is treated as an affidavit, its sufficiency must be tested by the same rules applicable to oral testimony. Conclusions that might stand as a matter of pleading are not competent to justify the issuance of an injunction. The rules are thus stated in *Willis* v. *Lauridson,* 161 Cal. 106, at page 108 [118 P. 530], as follows: ''Before examining the complaint it may be well to state some established rules of law which must govern us in determining its sufficiency as a basis for the extraordinary remedy of injunction. Where the verified complaint is the basis for the relief sought it takes the place of an affidavit and must be treated as such; and the facts so stated must stand the test to which oral testimony would be subjected. Averments which are but conclusions of law are not competent testimony, though they might stand as matter of pleading. Unless the statement, in the nature of a conclusion, is supported by the facts or circumstances on which it rests, it is insufficient to sustain an application for injunction. If the complaint, otherwise unsupported, is open to attack on general demurrer, it is insufficient.''

In *E. H. Renzel Co.* v. *Warehousemen's Union,* 16 Cal.2d 369, 373 [106 P.2d 1], the court stated: ''A complaint for an injunction which alleges only general conclusions, not warranted by any pleading of facts, does not state a cause of action to enjoin the acts complained of.''

In *McPheeters* v. *McMahon,* 131 Cal.App. 418, 425 [21 P.2d 606], this division of the court declared the rule to be that

"An injunction should rarely, if ever, be issued in a doubtful case. The power should be exercised only when the right is clear, the injury impending and threatened, so as to be averted only by the protecting preventive process of injunction."

In *Davitt* v. *American Bakers' Union*, 124 Cal. 99, 101 [56 P. 775], appears the following comment: "In the face of the demurrer interposed in this case the complaint must fall. Possibly, the complaint is not sufficient to stand, even against a general demurrer, but, however that may be, it surely is too weak to stand an attack made upon it by a special demurrer. This complaint deals in generalities throughout, and the rule for drafting a pleading which asks for the interposition of equitable relief demands a statement of the specific facts upon which relief is sought. Inferences, generalities, presumptions, and conclusions have no place in such a pleading." (See, also, *Mason* v. *San-Val Oil & Water Co., Ltd.*, 1 Cal.2d 670 [36 P.2d 616]; *Golden Gate S. T., Inc.* v. *San Francisco*, 21 Cal.App.2d 582 [69 P.2d 899]; *California Nav. Co.* v. *Union Tr. Co.*, 122 Cal. 641 [55 P. 591]; *Mechanics' Foundry* v. *Ryall*, 75 Cal. 601 [17 P. 703]; *People* v. *Seccombe*, 103 Cal. App. 306 [284 P. 725]; *Martin* v. *Danziger*, 21 Cal.App. 563 [132 P. 284]; *Bishop* v. *Owens*, 5 Cal.App. 83 [89 P. 844].)

▮ Tested by these standards the complaint, whether considered as a complaint or an affidavit, is insufficient to support the injunction. The judgments that the bank seeks to have satisfied were secured in 1932 and 1934. No steps were taken to collect these judgments until 1947. Actions on judgments are normally barred within five years from their rendition. (Code Civ. Proc., § 336.) Execution may issue on a judgment after five years upon a showing of due diligence. (Code Civ. Proc., § 685.) This plaintiff has heretofore moved the Superior Court of Los Angeles in January, 1947, for the issuance of executions on the very two judgments here involved, which motions were denied on the ground that the bank failed to exercise due diligence to discover assets during the five-year period, although the same facts as to diligence were pleaded there as are pleaded here. This was affirmed on appeal. (*Bank of America* v. *Williams*, 84 Cal.App.2d 562 [191 P.2d 17].) The present action, titled a "Complaint by Way of Creditor's Suit" was commenced in San Francisco after the trial court in Los Angeles had denied the motions under section 685, but before the appellate court had decided the appeals. The theory of the present complaint is that Williams now has assets in the names of dummies

that could be levied upon to pay the judgments, and that Williams is estopped from pleading the statute of limitations because, so it is claimed, sometime in the past he falsely informed the bank officials that he had no assets. The theory is that, by such allegedly false representations, he fraudulently induced the bank not to investigate his assets and not to try to enforce the judgments until 1946 when a $26,000 check in his name as payee was discovered. ■ There can be no doubt that, in a proper case, where a party fraudulently conceals the existence of a cause of action against him, or fraudulently conceals material facts that induces a person not to prosecute a known cause of action, the statute of limitations is tolled and the fraudulent person is estopped from pleading the statute of limitations. (*Kimball* v. *Pacific Gas & Elec. Co.*, 220 Cal. 203 [30 P.2d 39]; *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325]; *Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346 [159 P.2d 24].) ■ To allege such a cause of action the fraud must be alleged with the usual particularity required in such actions. The existence of such fraud must be alleged clearly and unequivocally, and must not rest upon inferences. In addition, the plaintiff must allege when the fraudulent concealment was discovered, the circumstances of discovery, and must allege facts showing that plaintiff was not at fault for failing to discover the fraud sooner. ■ It is apparent that, in the present action, inasmuch as the basic contention is that there was a fraudulent concealment of assets, such concealment must have occurred in the five-year period immediately after the securing of the judgments. Any false representation or concealment made after the statute of limitations had run on the judgments could not operate *ex post facto* to remove the bar of the statute, or to estop Williams from pleading it. (*Scafidi* v. *Western Loan & Bldg. Co.*, 72 Cal.App.2d 550, 566 [165 P.2d 260].)

■ If these rules be applied to the problem here involved it is clear that plaintiff was required to plead, without equivocation and with certainty, that during the five-year period involved Williams had property, and that during the five-year period Williams made false representations about, or concealed, such property. No such positive averments were made.

The complaint contains 17 separate paragraphs and, exclusive of exhibits, covers 24 pages of the clerk's transcript. Most of its allegations relate to the manner and time of dis-

covery of the claimed fraud, and to attempting to allege facts showing that the plaintiff was not negligent in failing to discover the fraud sooner. There are but very few allegations relating to conditions during the critical five-year period, and what allegations exist on this subject are mere conclusions and are legally insufficient.

The complaint alleges that the first Los Angeles judgment was secured against Williams on July 17, 1932, in the sum of $34,512.50, and the second Los Angeles judgment was secured against Williams and one Lange on April 30, 1934, in the sum of $15,609.27. A judgment in San Francisco was secured against Williams and one Dunn on June 6, 1933, in the sum of $2,096.48. The San Francisco judgment was renewed in 1938 and again in 1945. No steps were ever taken to renew the two Los Angeles judgments. Early in 1945 the bank settled its difficulties with Dunn, and in June, 1945,. sought to secure a writ of execution against Williams on the renewed San Francisco judgment. This proceeding was dismissed when Williams telephoned Grassens, bank officer in charge of collections, and told him that he was too ill to appear, and had no property. In December, 1946, Williams was served with a notice to appear in court to answer as to his ability to pay the San Francisco judgment, but before the hearing Williams paid the bank $4,186.30 in full satisfaction of that judgment.

No legal steps were ever taken to collect the Los Angeles judgments until January, 1947, when the Los Angeles proceedings under section 685 of the Code of Civil Procedure for the securing of executions on the two Los Angeles judgments were filed.

The facts in reference to the discovery of the claimed fraud are alleged in detail in paragraph VIII of the complaint. It is therein alleged that Grassens, on October 16, 1946, while investigating another debtor of the bank, investigated certain checks drawn by Lester G. Loupe and Company, a partnership engaged in the real estate business as is Williams, and discovered a partnership check to Williams in the sum of $26,215.96; that Grassens then investigated Williams' relationship to the partnership. Upon the basis of that investigation the bank alleges, on information and belief, that a corporation known as Lester G. Loupe and Company was organized in March, 1932[1]; that on January 3, 1945, the corpora-

---

[1] There is no direct or indirect allegation that Williams was a stockholder or officer of the corporation or that he had any interest of any kind therein.

tion filed a certificate electing to wind up and dissolve; that on the same date the partnership with the same name was organized; that Williams was a partner of said partnership; that on August 20, 1946, Lester G. Loupe, one of the partners, died, and the partnership dissolved; that Ruth Loupe was appointed executrix of the estate of Lester G. Loupe; that after the death of Lester Loupe the surviving partners proceeded to liquidate the partnership and to distribute its assets among the members, and in the course thereof issued the check to Williams as part of his share of the assets; that certain described parcels of real property stand in the name of defendant Fruhling; that Fruhling does not own the beneficial interest therein, but holds the same in trust for others; that the bank has not sufficient information and belief to enable it to allege whether Fruhling holds title for the partnership, or whether the surviving partners and Ruth Loupe have agreed that each partner owns a beneficial interest in the properties as tenant in common in proportion to his interest in the partnership, or whether Fruhling holds title for someone besides the partnership, but in any event the bank, on information and belief, alleges that Williams owns a beneficial interest in such properties either as a partner or as an individual.

Paragraph IX purports to allege facts to show that "There was no neglect on the part of said Bank in not having discovered" prior to October, 1946, "that said Williams, either as a partner . . . or in his own individual capacity, had an interest in said parcels of real property."[1] It is also alleged that Williams suffered no prejudice by reason of this delay in discovery, because "Williams during the last mentioned period [from July 17, 1932, to October, 1946] has concealed from said Bank the ownership by him of any property he may have owned during the last mentioned period by causing all such property to be put in the name of dummies and by informing said Bank whenever said Bank inquired of him whether or not he could pay his indebtedness to it that he could not do so and that he had no property which he could apply to said purpose. As heretofore alleged said Williams told said Grassens in said telephone conversation . . . [after July 13, 1945] that he had no property with which to pay

---

[1] It will be remembered that in *Bank of America* v. *Williams*, 84 Cal.App.2d 562 [191 P.2d 17], the court held that allegations similar to the ones contained in this complaint show a complete lack of due diligence on the part of the bank during the critical five-year period.

his indebtedness to said Bank." It is further alleged that after recovering the San Francisco judgment in June, 1933, the "Bank . . . caused an officer or employee of the San Francisco Main Office of said Bank to telephone about every six months to said Williams at his office in San Francisco to discuss with him the payment by him of the amount due said Bank under said judgment of June 6, 1933"; that similar calls were made after the renewals of 1938 and 1945; that "on some of said telephone calls" the bank was informed that Williams was ill "but on many of said telephone calls, the officers or employees of said Bank making said calls talked with said Williams, and asked him whether or not he was in a position to make payments on account of his indebtedness to said Bank under said judgment of June 6, 1933, or the one of said renewal judgments then in effect, and said Williams always replied that he had no property and was unable to make any such payments." It is then averred that, although this lulled the bank "into the idea that said Williams did not have any property which could be subjected to the payment of the indebtedness," the bank exercised diligence by checking the assessment rolls and other records and took other steps.[1] Then follow several paragraphs not here pertinent. Paragraph XIII starts off as follows: "During the period commencing on July 17, 1932, to the time when said Bank discovered that said Williams had an interest in said partnership said Williams, as heretofore alleged, from time to time falsely represented to said Bank that he had no property which could be applied to the payment of the indebtedness owing by him to said Bank"; that such representations were made with intent to induce the bank from taking any step in reference to enforcing the judgments, and said bank in reliance thereon took no steps to enforce the Los Angeles judgments until July of 1945; that "as heretofore alleged said Williams during the last mentioned period concealed from said Bank the ownership by him of property that said Bank could have subjected to the payment of said judgments"; that such facts estop Williams from claiming that the bank is barred from relying on the statute of limitations.

This fairly summarizes all of the allegations of the complaint here pertinent. It may be assumed that the allegations of discovery are sufficient. It may be assumed that the unsworn statement of a debtor to his creditor that he has

---

[1]All held not to constitute due diligence by the Los Angeles court in *Bank of America* v. *Williams*, 84 Cal.App.2d 562 [191 P.2d 17].

no assets, if false, constitutes the fraudulent concealment of assets. It may also be assumed that the Los Angeles opinion in *Bank of America* v. *Williams*, 84 Cal.App.2d 562 [191 P.2d 17], involving these two same judgments, is not *res judicata* of any issue herein involved. It may further be assumed that this type of independent action to enforce a dormant judgment is permissible, and that a creditor is not relegated solely to section 685 of the Code of Civil Procedure for this purpose. All such assumptions are of no avail to the bank because the bank has failed to plead, clearly and unequivocally, two fundamental facts: (1) That Williams actually owned or possessed property prior to 1939 when the statute of limitations ran on the last Los Angeles judgment; (2) that the representations claimed to have been made by Williams (assuming if made, and if false, that they would have been fraudulent) were made prior to the time the statute of limitations had run. An examination of the complaint discloses that the pleader has studiously and quite obviously refrained from making a positive allegation as to either of these facts. All that appears at best is an inference that property was owned, and an inference that the representations were made during the required period. In the face of the special demurrer, and in view of the rules heretofore set forth as to the tests to be applied when the extraordinary relief by injunction is sought, the pleading considered as an affidavit must be held to be legally insufficient to warrant injunctive relief.

There are other defects in the complaint.

It will be noted that throughout the complaint in most cases when a specific date is alleged when an act was performed, such date is later than 1939. It will also be noted that, although it is alleged that the corporation was organized in 1932, it is not alleged that Williams was a stockholder or director or officer or that he had any interest therein. The partnership was not organized until 1945. All of the allegations about Fruhling holding the property in trust were on information and belief, and Williams' interest therein is alleged on information and belief. ■ It is a general rule that affidavits made on information and belief as to facts that have transpired are hearsay and must be disregarded. (*Pelegrinelli* v. *McCloud River Lbr. Co.*, 1 Cal.App. 593 [82 P. 695]; *People* v. *Findley*, 132 Cal. 301 [64 P. 472]; see cases collected 1 Cal.Jur. § 17, p. 671.) It is also quite doubtful that reliance on the alleged fraudulent misrepresentation is

properly pleaded. It will be noted that it is pleaded that a San Francisco officer or employee telephoned Williams to inquire concerning the latter's ability to pay *the San Francisco judgment*. There is no allegation that the results of these conversations were ever communicated to the Los Angeles branch, and there is no direct allegation that the bank ever relied upon these representations in failing to enforce *the Los Angeles judgments*. It is significant that, while reliance is pleaded as a conclusion, the facts pleaded show that the bank did not rely on the representations of Williams so far as the San Francisco judgment—the sole judgment involved in the allegedly false representations—is concerned, because the bank had that judgment renewed on two occasions. It is quite inconsistent to plead that because a debtor made a false representation concerning his ability to pay a particular judgment, that we did not rely on the representation concerning that judgment, but, as a conclusion, we did rely on it concerning two other judgments not directly involved in the representation.

But, regardless of these defects, as already pointed out, the basic fault of this complaint, considered as an affidavit, is the failure to aver that the representations were made prior to 1939, or that Williams owned property and fraudulently concealed it prior to that date. The allegations are (par. IX) that Williams suffered no prejudice in the late discovery because "Williams during the last mentioned period [by inference 1932-1946] has concealed from said Bank the ownership by him of any property he may have owned." It will be noted that it was "during" the period—any time during that time—that Williams is asserted to have concealed ownership of "any property he *may* have owned," not that he concealed prior to 1939 property that he did own. The other allegation is found in paragraph XIII and is to the effect that "During the period commencing on July 17, 1932, to the time when said Bank discovered that said Williams had an interest in said partnership said Williams, as heretofore alleged [obviously referring back to the above-quoted language from Par. IX] from time to time falsely represented to said Bank that he had no property." Again the pleader has carefully refrained from directly alleging ownership during the required period.

The defect is even more pointed when the dates of the alleged misrepresentations are considered. It is alleged that after 1932 an officer or employee in San Francisco telephoned

Williams "about every six months" about his ability to pay the San Francisco judgment; that "on some of said telephone calls" Williams was ill and could not come to the telephone, "but on many of said telephone calls" Williams stated that he was unable to pay the San Francisco judgment. The pleading carefully refrains from alleging that such misrepresentations were made prior to 1939. For all that appears, all such representations were made subsequent to that date.

The courts are not prone to protect fraudulent debtors, if they have fraudulently concealed assets. But the statute of limitations is also an important part of our law. Debtors should not be harassed by their creditors years after the judgment has outlawed, except where the fraud clearly appears. Certainly, the extraordinary relief by injunction should never be granted unless the complaint or affidavit clearly alleges a fraudulent concealment prior to the running of the statute. If the bank can allege the facts entitling it to such relief it can, of course, amend its pleading to set forth such facts. But on the present pleading, considered as a pleading or as an affidavit, it was error to have granted the injunction.

The orders granting the temporary injunction and denying the motion to vacate the injunction are reversed.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied January 5, 1949, and respondent's petition for a hearing by the Supreme Court was denied February 3, 1949. Carter, J., voted for a hearing.