[No. B032109. Second Dist., Div. Four. Mar. 2, 1989.].

KATHLEEN BROWNFIELD, Plaintiff and Appellant, v.
DANIEL FREEMAN MARINA HOSPITAL, Defendant and
Respondent.

COUNSEL

Allred, Maroko, Goldberg & Ribakoff, Elizabeth Grady and Michael Maroko for Plaintiff and Appellant.

Kirtland & Packard, Dean A. Alper and Steven H. Schwartz for Defendant and Respondent.

OPINION

WOODS (A. M.), P. J.—Appellant Kathleen Brownfield filed an action in which she sought, on behalf of herself and the general public, a declaration that Daniel Freeman Marina Hospital's failure "to provide information about and access to estrogen pregnancy prophylaxis to rape victims as part of their emergency medical treatment . . . constitutes a failure to provide optimal emergency treatment of rape victims in accordance with the standard of good medical practice in Los Angeles County; . . ." She further sought an injunction ordering Daniel Freeman Marina Hospital (respondent) to "provide rape victims with information and access to estrogen pregnancy prophylaxis, including the morning-after pill," or, alternatively, ordering respondent to discontinue treatment of rape victims and transport them to the nearest hospital emergency room or other facility which provides "complete emergency medical treatment for rape consistent with the standard of medical practice in Los Angeles County, including information and access to estrogen pregnancy prophylaxis, including the morning-after pill; . . ." Appellant sought no monetary damages.

She appeals from judgment entered pursuant to stipulation after the trial court sustained respondent's demurrer to her first amended complaint with leave to amend.

Appellant's first amended complaint alleged that she was taken to respondent hospital's emergency room by police after being raped. Her mother asked for information concerning the "morning-after pill," a "pregnancy prevention treatment." Respondent hospital refused to provide information concerning this treatment, despite the fact that appellant was at risk of pregnancy, because it was "a Catholic Hospital." It also allegedly failed to inform appellant that if she chose to receive this treatment she should immediately contact her doctor or another emergency room in order to obtain it within the 72-hour period during which such treatment is effective. Appellant alleged that she did not see her family doctor until more than 72 hours after the rape. There was no allegation that she became pregnant as a result of the rape.

This failure of the hospital was alleged to constitute an unfair business practice in violation of Business and Professions Code section 17200 et seq., a tortious breach of respondent's implied contract to provide treatment consistent with the standard of medical practice in the community, a violation of appellant's state and federal constitutional rights to liberty, happiness and privacy, a violation of her civil rights pursuant to 42 United States Code section 1985(3), and a breach of the fiduciary duty arising from the patient-physician relationship.

The trial court sustained respondent's demurrer to each cause of action of the first amended complaint and to the complaint in its entirety on the grounds that: (a) no injunction lies where the alleged wrong is completed, (b) the alleged failure to provide "optimal emergency medical care" did not constitute unfair competition, (c) no injunction can be granted to prevent the breach of a contract which is not set forth with sufficient certainty, (d) there were no allegations demonstrating the inadequacy of legal remedies, and, (e) no facts were alleged in support of the conclusion that a fiduciary relationship existed between respondent and appellant.

Appellant contends in this appeal that the trial court "erred on the law and abused its discretion in sustaining the Demurrer." She further contends that her "pleading is clear as to the threat of future harm, the breach of fiduciary duty, the breach of contractual obligation, and the violation of constitutional rights."

I

The issue as to whether the trial court abused its discretion arises only when a demurrer is sustained without leave to amend. (*Blatty* v. *New*

*York Times Co.* (1986) 42 Cal.3d 1033, 1040-1041 [232 Cal.Rptr. 542, 728 P.2d 1177].) Here the trial court granted leave to amend in response to the specific request of appellant's counsel. Appellant's decision not to amend cannot be the basis of a credible argument that the trial court abused its discretion. Thus, the only issue before this court is whether, as a matter of law, appellant's first amended complaint stated a cause of action for declaratory or injunctive relief against respondent.

■ Our review of this issue is guided by the familiar principles that the sufficiency of a cause of action is to be judged without regard for improperly pled allegations (*Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118, 121, 126 [137 Cal.Rptr. 239]), and assuming the truth of all properly pled allegations (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 460 [253 Cal.Rptr. 236, 763 P.2d 1326]).

■ A complaint for declaratory relief must demonstrate: (1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party. (See *City of Tiburon* v. *Northwestern Pac. R.R. Co.* (1970) 4 Cal.App.3d 160, 170 [84 Cal.Rptr. 469].) The "proper subjects" of declaratory relief are set forth in Code of Civil Procedure section 1060 and other statutes. (See, e.g., Gov. Code, § 11350; Civ. Code, § 4212.) The "actual controversy" requirement concerns the existence of *present* controversy relating to the legal rights and duties of the respective parties pursuant to contract (Code Civ. Proc., § 1060), statute or order. (See *Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].) Where the allegations of the complaint reveal the controversy to be conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court, the fundamental basis of declaratory relief is lacking. (See, e.g., *Merkley* v. *Merkley* (1939) 12 Cal.2d 543, 547 [86 P.2d 89]; *Silva* v. *City & County of San Francisco* (1948) 87 Cal.App.2d 784, 789 [198 P.2d 78]; *Deming* v. *Communist Party* (1944) 64 Cal.App.2d 35, 38 [148 P.2d 135].)

■ The elements of a cause of action for injunctive relief are (1) a tort or other wrongful act constituting a cause of action (see *Bank of America* v. *Williams* (1948) 89 Cal.App.2d 21, 24 [200 P.2d 151]); and (2) irreparable injury, i.e., a factual showing that the wrongful act constitutes an actual or threatened injury to property or personal rights which cannot be compensated by an ordinary damage award. (See *E. H. Renzel Co.* v. *Warehousemen's Union* (1940) 16 Cal.2d 369, 373 [106 P.2d 1].)

With these principles in mind, we review the allegations of appellant's complaint.

## II

The purpose of the Unfair Practices Act (Bus. & Prof. Code, § 17001 et. seq.) is to "safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." (Bus. & Prof. Code, § 17001.)

■ Appellant argues that the act has broad application to protect wronged consumers. She describes herself as a "consumer of the most tragic sort . . . in need of special emergency services . . . not in a position to shop around, or to educate herself as to the medical ramifications of rape, and the treatment options available to her . . . unsophisticated and entitled to receive optimal care . . . ."

Although the chapter is to be liberally construed (Bus. & Prof. Code, § 17002), the allegations of the first amended complaint simply do not fall within the rubric of any of the acts specified by the Legislature to be offenses against the chapter. (See Bus. & Prof. Code, §§ 17040-17051.) Appellant admits that respondent treated her, advised her to see her doctor within the next two days and forthrightly told her it did not offer the morning-after pill treatment. Under these circumstances respondent's failure to voluntarily offer information concerning possible pregnancy prevention, and its failure to advise appellant that the time limit for effective use of the treatment is 72 hours after intercourse, does not amount to an unfair, dishonest, deceptive, destructive, fraudulent or discriminatory practice which destroys or prevents fair and honest competition. The trial court therefore properly concluded that the first cause of action failed to allege facts sufficient to state a cause of action.

## III

■ Appellant's cause of action for tortious breach of contract is posited on the theory that respondent, by deliberately and actively seeking to treat emergency patients, by entering into written contractual arrangements with local law enforcement agencies, and by agreeing to treat plaintiff "for her medical and psychological emergency from rape" impliedly promised to provide the special and unique service of optimal rape-emergency medical care and treatment consistent with the standard of medical practice in the community. Respondent allegedly breached this promise because it "never intended" to provide optimal rape-emergency care to appellant in that it did not intend to give her information about and/or access to the morning-after pill.

Appellant argues that she has alleged facts sufficient to state a cause of action for breach of a special contract for a unique service, the loss of which cannot be reasonably compensated in damages. We disagree. It appears from the allegations of the complaint that respondent, like many other hospitals, provided emergency care. Local law enforcement agencies brought victims of crime there pursuant to "written contractual arrangements." It follows, unfortunately but logically, that on occasion the victim would have been raped. These facts do not transform either the hospital's written agreement with law enforcement agencies or its acceptance of rape victims into a personal service contract. (See *Motown Record Corp.* v. *Brockert* (1984) 160 Cal.App.3d 123, 126 [207 Cal.Rptr. 574].) The trial court therefore properly concluded that appellant's second cause of action was insufficient to support her prayer for declarative or injunctive relief.

## IV

Appellant's third and fourth causes of action, for the alleged violation of constitutional and civil rights, are predicated on the fact that medical patients have the right to self-determination in their treatment. (*Bartling* v. *Superior Court* (1984) 163 Cal.App.3d 186, 195 [209 Cal.Rptr. 220].) Implicit in the allegations of her complaint is the contention that appellant's right to control her treatment must prevail over respondent's moral and religious convictions. We agree.

Our research revealed that the state Legislature considered this conflict in the enactment of the Therapeutic Abortion Act (Health & Saf. Code, § 25950 et. seq.), and specifically provided in section 25955, subdivision (c), that no nonprofit hospital or clinic which is organized or operated by a religious corporation or other religious organization or its administrative officers, employees, agents, or members of its governing board shall be liable, individually or collectively, for failure or refusal to perform or to permit the performance of an abortion in such facility or clinic or to provide abortion services.

This court requested the parties to submit additional briefing addressing the issue of the effect of section 25955, subdivision (c), as applied to the facts alleged in appellant's complaint. We note, initially, that the act does not define the term abortion. Respondent apparently assumes the morning-after pill constitutes abortion and contends that the statute bars appellant's complaint as a matter of law. Appellant argues that the statute does not apply for two reasons: (1) estrogen pregnancy prophylaxis is "post-coital contraception," not abortion; and (2) subdivision (d) of the statute states that it shall not apply to medical emergency situations and spontaneous

abortions. Appellant asserts that there "has been no legal, medical or political decision to label this treatment as abortion."

Our research has found no case which contradicts appellant's assertion that the treatment in question does not constitute abortion. It has, however, disclosed one case which supports her assertion. In *Margaret S.* v. *Edwards* (E.D. La. 1980) 488 F.Supp. 181, plaintiffs contended that the definition of abortion in a statute regulating abortion was impermissibly vague because it would include at least two methods of birth control, the IUD and the morning-after pill, both of which were described as "attempts to terminate pregnancy after fertilization but before implantation." (488 F.Supp. at p. 191, fn. omitted.) The court concluded that although the statute's definition was somewhat ambiguous, "Abortion, as it is commonly understood, does not include the IUD, the 'morning-after' pill, or, for example, birth control pills." (*Ibid.*)

Another case of interest is *McRae* v. *Califano* (E.D. N.Y. 1980) 491 F.Supp. 630, 763, in which evidence of the Roman Catholic Church's position on abortion was recounted including, inter alia, the observation that although its declaration on abortion stated life must be safeguarded from conception and that life began with fertilization, it expressly left open the question of " 'when the spiritual soul is infused. . . . For some it dates from the first instant, for others it could not at least precede . . . [implantation].' " (*Id.,* at p. 693. See also *Roe* v. *Wade* (1973) 410 U.S. 113, 161 [35 L.Ed.2d 147, 181, 93 S.Ct. 705, 730-731]: "Substantial problems for precise definition of [the ensoulment theory] are posed, however, by new embryological data that purport to indicate that conception is a 'process' over time, rather than an event, and by new medical techniques such as menstrual extraction, the 'morning-after' pill, implantation of embryos, artificial insemination, and even artificial wombs.") (Fn. omitted.)

Appellant alleged, and respondent by its demurrer admitted, that the morning-after pill was a "pregnancy prevention" treatment, the proper name of which was estrogen pregnancy prophylaxis. The conclusion that the treatment constitutes "prevention," i.e., birth control, rather than "termination," i.e., abortion, is consistent with the above-cited law. We therefore conclude that Health and Safety Code section 25955, subdivision (c), does not immunize respondent from liability for failure or refusal to provide information about estrogen pregnancy prophylaxis to rape victims.[1]

■ The duty to disclose such information arises from the fact that an adult of sound mind has "the right, in the exercise of control over [her] own

---

[1] It is reasonable to assume from appellant's silence on the subject that she did not become pregnant as a result of the rape. If she had, she would have been entitled to seek an abortion pursuant to the provisions of the Therapeutic Abortion Act. (Health & Saf. Code, § 25952.)

body, to determine whether or not to submit to lawful medical treatment." (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 242 [104 Cal.Rptr. 505, 502 P.2d 1].) Meaningful exercise of this right is possible only to the extent that patients are provided with adequate information upon which to base an intelligent decision with regard to the option available (*Id.*, at pp. 242-243.) Therefore, when a rape victim can allege: that a skilled practitioner of good standing would have provided her with information concerning and access to estrogen pregnancy prophylaxis[2] under similar circumstances; that if such information had been provided to her she would have elected such treatment; and that damages have proximately resulted from the failure to provide her with information concerning this treatment option, said rape victim can state a cause of action for damages for medical malpractice. (*Id.*, at p. 245.)

■ Having reached the conclusion that a rape victim denied this information may file an action for damages, it necessarily follows that appellant has not and cannot allege facts demonstrating that she or the general public have, or will, suffer injuries which cannot be compensated by an award of damages. For this reason, the trial court properly concluded that she did not state a cause of action for injunctive or declaratory relief. (See *Cardellini* v. *Casey* (1986) 181 Cal.App.3d 389, 396-397 [226 Cal.Rptr. 659]; *E. H. Renzel Co.* v. *Warehousemen's Union, supra,* 16 Cal.2d at p. 373.)

We need not, and do not, discuss appellant's claims regarding respondent's alleged breach of fiduciary duty.

The judgment is affirmed.

George, J., and Goertzen, J., concurred.

---

[2] "Access to" the treatment may take the form of transfer of the patient to another medical facility or another physician. (See *Conservatorship of Morrison* (1988) 206 Cal.App.3d 304, 310 [253 Cal.Rptr. 530].)