Filed 4/30/13  County of Los Angeles v. City of Downey CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| COUNTY OF LOS ANGELES et al., | B238386 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC433683) |
| v. | |
| CITY OF DOWNEY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara Marie Scheper, Judge.  Reversed with directions.

Howard Gest, David W. Burhenn, Burhenn & Gest, John F. Krattli, County Counsel, Judith A. Fries, Principal Deputy County Counsel, Laurie E. Dods, Deputy County Counsel, for Appellants.

Richard Montevideo, Peter J. Howell, Rutan & Tucker, Attorneys for Defendant and Respondent City of Downey.

Carmen A. Trutanich, City Attorney, Gary G. Geuss, Chief Assistant City Attorney, Laurie Rittenberg, Assistant City Attorney, Sara Ugaz, Deputy City Attorney for Defendants and Respondents City of Los Angeles and Department of Water and Power.

_____

The County of Los Angeles and its Flood Control District (County) brought this action against the cities of Downey and Los Angeles and the Los Angeles Department of Water and Power (Cities) alleging that Cities have created and are maintaining a nuisance by discharging a "toxic soup" of pollutants into the Los Angeles River, its tributaries and the County's flood control system. The court sustained Cities' demurrer to the second amended complaint without leave to amend, denied the County's requests for reconsideration and leave to file a third amended complaint and entered a judgment dismissing the action. We reverse the judgment and direct the trial court to permit the County to file a third amended complaint alleging damages.

### FACTS AND PROCEEDINGS BELOW

In reviewing an order sustaining a demurrer, we treat the well-pleaded facts as true and give them a liberal interpretation. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

The County's first amended complaint for nuisance sought damages and injunctive relief. The trial court sustained Cities' demurrer on the grounds that the complaint failed to state a cause of action for nuisance and the County failed to present Cities with adequate claims for money damages under the Government Claims Act. (Gov. Code, §§ 910, 945.4.) The court struck the County's claim for damages and allowed it to amend its complaint for injunctive relief.

The County's second amended complaint for nuisance alleges the following.[1]

One of the County's missions is to protect its residents from flood waters and to conserve water for their use. "In connection with its flood control and water conservation responsibilities, the [County] owns and operates a flood control system in portions of the Los Angeles River and its watershed."

The City of Los Angeles owns, operates and maintains over 2,000 miles of open channels, drainage pipes and other structures which discharge polluted storm water and

---

[1] Future references to "the complaint" are to the second amended complaint unless otherwise stated.

2

urban runoff into the Los Angeles River, its watershed and the County's flood control system. A report prepared in November 2008 based on monitoring the discharge from the City of Los Angeles's storm sewers and drains found "highly elevated concentrations" of coliform, fecal matter, E. coli, enterococcus and bacteroidales as well as "chloride, cyanide, aluminum, antimony, cadmium, copper, lead, silver, zinc and cyanide." The City of Los Angeles Bureau of Sanitation describes this pollution on its website.

The complaint further alleges that the City of Los Angeles Department of Water and Power generates and discharges effluent into the County's flood control system which, from time to time, exceeds the effluent limits and water quality standards established by the Los Angeles Regional Water Quality Control Board for the Los Angeles River. In addition, pH levels in the storm runoff have been detected above the range set by the Water Control Plan established for the Los Angeles River by the Los Angeles Regional Water Quality Control Board.

It is alleged that the City of Downey's storm sewers, roadways, gutters and other structures also generate and discharge pollutants into the County's flood control system. These discharges contain many of the same bacteria and chemicals contained in the discharge from the City of Los Angeles.

The County alleges that in the operation and maintenance of their storm sewers, roadways, and other facilities, the Cities have caused and are continuing to cause "the discharge of pollutants, including toxic urban runoff and storm water into the Los Angeles River, its watershed, and the [County's] flood control system in a fashion which is injurious to health, indecent and/or offensive to the senses and/or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property and the environment. . . . As such, the conduct of Defendants constitutes a condition of nuisance within the meaning of Civil Code section 3479."

3

Furthermore, the County alleges, the Cities' toxic discharges are created during and as the result of the disposal of wastes and therefore constitute "a nuisance per se, in violation of California Water Code sections 13000 et seq." (Italics omitted.)

As a result of the Cities' conduct, the County has spent and continues to spend funds to address the presence of pollutants in its flood control system caused by discharges from the Cities' storm sewers, roadways, and other facilities. This includes the construction, operation, and maintenance of pollution control equipment to address the pollutants discharged by the Cities.

The Cities have breached their duty not to cause or permit the discharge of pollutants that would be injurious to health and the environment or to allow the continuance of a nuisance. Unless restrained by the court, the Cities "will continue to discharge pollutants from their storm sewers, roadways, and/or other facilities and will otherwise continue the acts complained of herein, all to the detriment of plaintiffs."

Finally, the complaint alleges that the County has no adequate remedy at law and that unless the Cities are enjoined from continuing to discharge pollutants into the County's flood control system the County "will suffer irreparable injury as the discharges of toxic urban runoff and storm water will cause continuing and cumulative damage to the property of [the County's] flood control system . . . and will require [the County] to take action to abate such damage, which action will further interfere with [the County's] use and enjoyment of [its property]." This, in turn will require the County to bring a multitude of actions to address its ongoing damages.

The complaint concludes with a prayer for injunctive relief, costs of suit, attorney fees, and such other relief as the court deems just and proper.

The Cities demurred on the ground the complaint failed to state a cause of action. The court sustained the demurrer without leave to amend. The County moved for reconsideration and lodged a proposed third amended complaint. The court denied the motion for reconsideration and denied the County leave to file a third amended complaint.

4

The trial court entered an order dismissing the action and the County filed a timely appeal.

## DISCUSSION

This appeal raises three issues: Does the complaint state a cause of action for nuisance? If so, does it state sufficient facts to support a claim for injunctive relief? Did the County give the Cities adequate notice of damages under the Government Claims Act? We conclude that at least to the extent the County alleges Cities generated at their facilities the pollution that is causing injury, the County states a cause of action for nuisance. We further conclude that the complaint alleges sufficient facts to support a claim for injunctive relief and that the County gave Cities sufficient information to enable them to adequately investigate the County's claim that they were responsible in whole or part for the pollution of the Los Angeles River.

## I. THE SECOND AMENDED COMPLAINT STATES A CAUSE OF ACTION FOR NUISANCE.

Nuisance is statutorily defined as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway . . . ." (Civ. Code, § 3479.)

The County's complaint sufficiently alleges a nuisance because it alleges that the Cities have interfered with the use of its flood control facilities by generating and then discharging harmful pollutants into those properties. The complaint alleges that as a result, the County "has spent and must continue to spend funds to address the presence of pollutants in its flood control system caused by discharges from [the Cities'] . . . facilities[.]"

Cities contend that even if polluted water passes through their storm drains into the County's property, "nuisance liability requires more than a passive or attenuated causal connection to contamination." (*Redevelopment Agency v. BNSF Ry.*

5

(9th Cir. 2011) 643 F.3d 668, 674, fn. 2 (*Redevelopment Agency*), citing *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 309-310 and *City of Modesto Redevelopment Agency v. Superior Court* (2004) 119 Cal.App.4th 28, 43.) In *Redevelopment Agency*, the defendants constructed an underground drain across their property, which, unbeknownst to them, allowed petroleum discharged from a third party's property to migrate through the drain onto the plaintiffs' property. (*Redevelopment Agency*, at pp. 671-672.) The Ninth Circuit held that "[u]nder California law, conduct cannot be said to 'create' a nuisance unless it more actively or knowingly generates or permits the specific nuisance condition." (*Id.* at p. 674.) Here, the defendants "did not spill the petroleum or otherwise release it into the environment" nor did they "affirmatively direct its flow or knowingly permit it to migrate into the french drain and onto the [plaintiffs'] [p]roperty." (*Ibid.*)

The case before us is distinguishable from *Redevelopment Agency* because the County alleges Cities actually generated some of the pollution that entered its property. Thus, at least to the extent the County alleges that Cities' facilities generated the toxic pollution they discharged, and didn't simply pass through the pollution created by others, the County states a cause of action against Cities for nuisance. Accordingly, because the complaint states a cause of action, the judgment must be reversed.

## II.     THE SECOND AMENDED COMPLAINT PLEADS SUFFICIENT FACTS TO SUPPORT INJUNCTIVE RELIEF.

Cities argue that the County's prayer for injunctive relief must be denied because the second amended complaint does not include any allegations of the specific facts upon which injunctive relief is sought nor the "specific acts" the County seeks to enjoin. We reject Cities' argument for two reasons.

The second amended complaint sufficiently alleges the facts upon which the County seeks injunctive relief. (See Facts and Proceedings *ante*, at pp. 2-4.) The specific acts it seeks to enjoin are the alleged discharging of bacteria, chemicals, metals and trash into the County's flood control system in excess of the range set by the Water Control

6

Plan established for the Los Angeles River by the Los Angeles Regional Water Quality Control Board.  (*Ibid*.)

Furthermore, we do not accept Cities' argument that more detailed and specific allegations of fact are required in complaints seeking injunctive relief than in those only seeking damages.  The opinions Cities cite, *Bank of America v. Williams* (1948) 89 Cal.App.2d 21, 24 which in turn quotes from *Davitt v. American Bankers' Union* (1899) 124 Cal. 99, 101, addressed situations in which the plaintiffs sought to use their verified complaints as affidavits in support of injunctive relief.  (*Bank of America v. Williams*, *supra,* 89 Cal.App.2d at p. 23 ("Where the verified complaint is the basis for the relief sought it takes the place of an affidavit and must be treated as such;" see also *Davitt v. American Bankers' Union*, *supra,* 124 Cal. at p. 100.)  In those situations it made sense for the courts to treat the allegations in the verified complaints the way they would treat oral or written testimony in support of injunctive relief, requiring "a statement of the specific facts upon which relief is sought."  (*Davitt v. American Bankers' Union*, *supra*, 124 Cal. at p. 101.)  In contrast, the County's complaint is not being used as evidence to support an injunction.

The opinion in *Thompson v. Kraft Cheese Co.* (1930) 210 Cal. 171, also relied on by Cities, is not on point because in that case the court was critical of the injunction issued by the trial court, not the adequacy of the allegations in the complaint. (*Id*. at pp. 179-180.)

Alternatively Cities argue that the County is not entitled to injunctive relief because its second amended complaint shows that it has an adequate remedy at law in the form of damages.  The complaint alleges the County must "spend funds" to address the pollutants discharged into its flood control system by Cities and must install "pollution control equipment."  The incursion of such expenses, Cities reason, can be remedied by the payment of money.

This argument overlooks other allegations in the complaint that the pollution of the County's flood control system is continuing and recurrent and will result in a

7

multiplicity of suits unless permanently enjoined. Code of Civil Procedure section 526, subdivision (a)(6) authorizes a court to grant an injunction "[w]here the restraint is necessary to prevent a multiplicity of judicial proceedings."

### III. THE COUNTY COMPLIED WITH THE CLAIMS PRESENTATION REQUIREMENTS OF THE GOVERNMENT CODE.

The court struck the County's claim for damages in the first amended complaint because it found that the County's claims against Cities were insufficient under the Government Claims Act. We disagree.

Before a suit for damages can be brought against a public entity, California law requires that the would-be plaintiff present a written claim to that public entity. (Gov. Code, § 945.4.) The claim must include, among other things, "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim" and the amount of the claim if it totals less than $10,000. (Gov. Code, § 910, subds. (c), (d) & (f).)

The purpose of a claim "is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' [Citation.] Consequently, a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.' [Citations.]" (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446.) If the factual basis of the claim fairly matches the factual basis of the complaint, the claim adequately supports the complaint regardless of the legal theories, if any, advanced in the claim. (*Id*. at p. 447.)

The County met the requirements of a claim under Government Code section 910.

The claims that the County presented to Cities advised Cities that the County was being sued in federal court for violations of water quality standards in the Los Angeles River as measured at a "mass emission station" in the river between Willow Street and Wardlow Road in the City of Long Beach and included a copy of the first amended

complaint in the federal action. The claims identified the pollutants allegedly discharged into the river, the specific dates of discharge and the water quality standards alleged to have been violated. The County claimed that the pollutants identified in the federal lawsuit were discharged by Cities through their storm water and urban runoff upstream from the river's mass emission station. Specifically, the County alleged that "[t]o the extent that concentrations of pollutants are measured at the Los Angeles River mass emission station, such pollutants are attributable in whole or in part to discharges from the land areas of the [Cities]," their facilities and their storm drain system.

The County's claims informed Cities that if the court in the underlying lawsuit should determine that there were violations of water quality standards in the Los Angeles River, "then such exceedances were caused wholly or partially by discharges from the [Cities] . . . by the intentional, negligent, or otherwise unlawful or harmful acts or omissions of the [Cities], including but not limited to unlawful acts of [each city] as an upstream riparian entity that has caused or contributed to a condition of pollution or *nuisance*." (Italics added.) Accordingly, the County advised Cities that if it was held liable for damages, costs, fees or other expenses in the underlying lawsuit, it would seek "to be indemnified and held harmless and have judgment rendered against [Cities] for all sums incurred by reason of such judgment or settlement, including the expenses and costs of litigation."

Finally, the County informed Cities that the County could not state the amount of damages to which it was entitled because no judgment or settlement had yet occurred in the underlying action. Nevertheless, the County told Cities that it anticipated the amount of its claim would exceed $10,000.

Cities argue that the claims the County submitted to them do not support its action against them for damages based on nuisance. They point out that the County's claims asserted the harm to the County would consist of having to pay damages and occur expenses in the underlying federal lawsuit, not in having to abate a nuisance on County property caused by polluted water discharged by Cities. This argument fails because the

claims filed with Cities and the complaint in this action are "predicated on the same fundamental actions or failures to act by the defendants." (*Stockett*, *supra,* 34 Cal.4th at p. 447.) The claims and the complaint rest on the same premise—that Cities caused or permitted harmful levels of polluted water to be discharged from their facilities into the County's flood control system. Therefore, investigating the factual basis for the County's potential claim for indemnity in the underlying federal lawsuit would lead Cities to the same facts that would be relevant to the County's suit for nuisance.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to permit the County to file a third amended complaint alleging damages. In light of the excessive record designated by the County, we order each party to bear its own costs.

NOT TO BE PUBLISHED.


ROTHSCHILD, J.

We concur:



MALLANO, P. J.



CHANEY, J.


10